IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. PD-1084-05






DARRELL DEWAYNE CANNON, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


IN CAUSE NO. 05-04-01479-CR FROM THE FIFTH COURT OF APPEALS


COLLIN COUNTY






 Holcomb, J., delivered the opinion of the Court, in which Price,
Womack, Johnson, and Cochran, JJ., joined. Keller, P.J., and Meyers,
Keasler, and Hervey, JJ., dissented. 


 

 We grant the State's motion for rehearing, withdraw our opinion of October 17, 2007, and
substitute the following:

 We granted appellant's petition for discretionary review in order to determine whether he was
denied his Sixth Amendment right to the effective assistance of counsel. We now hold that he was denied
that right.

 On December 12, 2003, the criminal district attorney of Collin County filed an information in the
trial court charging appellant with misdemeanor driving while intoxicated. See Tex. Pen. Code § 49.04(a). 
On September 20, 2004, after several prior settings, the State brought appellant to trial, with the Honorable
John O. Barry presiding. The trial, including jury selection, lasted two days. 

 On the morning of the first day, shortly before jury selection began, defense counsel, Christopher
N. Hoover, presented the trial court with an oral motion for continuance and a written motion to recuse. 
The oral motion for continuance was apparently based on appellant's alleged need for an expert to assist
in the preparation of his defense. (1) The written motion to recuse alleged, in pertinent part:

 "About four weeks ago, counsel tried State of Texas v. Jason Dixon before Judge Barry. 
During that trial Judge Barry appeared to personally attack the undersigned and was not
fair and impartial. Events that occurred during that trial are the subject of a complaint with
the Judicial Conduct Commission being drafted by Mr. Hoover."


 The trial court, without hearing argument, denied the motion to recuse. Defense counsel then
moved that the motion to recuse "be heard by a neutral judge," but the trial court denied that motion, too. 
Defense counsel then announced that he was "not ready for this trial," that he would "be unable to
effectively represent [his] client," and that he could, therefore, "not participate" in the trial. The trial court
then denied the previously made oral motion for continuance, and jury selection began. Defense counsel,
true to his word, declined to participate in jury selection, explaining once again that he was "not ready for
this . . . trial," that he was "unable to effectively represent" his client, and that he was "unable to proceed."

 On the afternoon of the first day, the guilt stage of the trial began. At the beginning of the guilt
stage, defense counsel presented the trial court with an amended written motion to recuse. The amended
motion, like the earlier motion, alleged that Judge Barry's fairness and impartiality were

in question and that they were, in fact, the subjects of a complaint that defense counsel was preparing to
lodge with the Judicial Conduct Commission. Defense counsel did not ask for a ruling on the amended
motion to recuse, however, and, so far as the record shows, the trial court did not make one. (2) 

 After the State read the information to the jury, the trial court asked appellant how he pled, and
defense counsel responded that the defense was "not ready for trial" and could "not enter a plea at [that]
particular time." The trial court then entered, on appellant's behalf, a plea of "not guilty." The State then
made its opening statement. Defense counsel, although given the opportunity to make an opening
statement, declined to do so, explaining once again that he was "not ready" and was "unable to render
effective counsel." 

 The State proceeded with its case-in-chief, which consisted of the testimony of four witnesses -
three police officers and an intoxilyzer technician - and some exhibits. The State's evidence, which
included incriminating hearsay testimony, (3) was to the effect that, on the early morning of October 3, 2003,
in Collin County, appellant, while intoxicated with alcohol, operated a van that was involved in a one-vehicle accident. Defense counsel, although given the opportunity, declined to cross-examine any of the
State's witnesses or make any objections. When the State rested, defense counsel declined to offer any
defense. The trial court then announced, on appellant's behalf, that "[t]he defendant rests." The State then
closed. The trial court then asked the State whether it had any objections or requests regarding the jury
charge. The State responded with the request that the trial court "instruct the jury as to the [statutory
definition] of [per se] intoxication with regards to an alcohol concentration of 0.08 or higher." See Tex.
Pen. Code § 49.01(2)(B). The trial court, after a lengthy discussion with counsel, deferred a ruling on the
State's request. Shortly thereafter, the trial court announced to all that the court would be in recess until
1:00 p.m. the following day.

 When the trial court reconvened the next day, it heard more argument from the State regarding the
State's request for a jury instruction on per se intoxication, and then the court denied the State's request. 
Defense counsel then presented the court with a written motion for continuance and an oral motion for
instructed verdict. The written motion for continuance alleged, in pertinent part:

 "This is an accident DWI case in which the defendant submitted to the taking of
a sample of his breath after arrest. The result exceeded the legal limit of 0.080.

 "In the accident, the air bag deployed in the defendant's vehicle. This introduces
the unique issue of whether or not the air bag effected [sic] the breath test results as found
in the 'Tindall Effect.'[ (4)] This issue is one that requires testimony from an expert with
particular knowledge and training in forensic breath testing.

 * * *


 "The testimony of this expert witness is critical to the defense in this case and such
an expert is not available on this date to appear for trial."


Defense counsel did not ask for a ruling on the written motion for continuance, however, and, so far as the
record shows, the trial court did not make one. (5)

 With respect to defense counsel's oral motion for instructed verdict, the record reflects the
following:

 Defense Counsel: Your Honor, although I was not ready for this trial when it began
yesterday, I did have the opportunity to sit here and listen to the entire State's case-in-chief. And I'm going to point out to the State the cases of Ballard v. State, 757 S.W.2d
389; McCafferty v. State, 748 [S.W.2d] 489; Johnson v. State, 517 S.W.2d 536; and
Weaver v. State, 721 S.W.2d 495, and ask that the court grant an instructed verdict of
"not guilty" in this case in that, as a matter of law, the State's proof is insufficient to prove
either that Darrell Cannon drove or operated the van or that he was intoxicated at that
time, because I believe there's been no evidence elicited as to the time differential between
the accident and the police officer's arrival that performed the field sobriety exercise.


 The Court: Now, one moment, please.

 

 Defense Counsel: And let the record reflect that I have provided the court with copies of
those court cases.

 * * *


 The Court: Now, motion for instructed verdict denied.


 After the jury returned to the courtroom and the trial court confirmed that all of the witnesses were
still present, the following occurred:

 The Court: Mr. Hoover, even now, if you wish to reopen and recall any of the witnesses
who previously testified, you may do so.

 

 Defense Counsel: I understand, Your Honor. Again, I'm inadequately prepared to render
effective legal assistance to Mr. Cannon and again persist in my announcement of not
ready.


 The trial court then read the charge to the jury, and the State made its closing argument. Defense
counsel, though given the opportunity to make a closing argument, declined to do so, explaining once again
that he was "not ready" and was "unable . . . to assist Mr. Cannon in his defense."

 The jury retired to deliberate. Fifteen minutes later, the jury returned a verdict of "guilty." The
following then occurred:

 The Court: Now, Mr. Hoover, I see no written election on file. I see no written application
for community supervision on file. If, however, you contend that the defendant has elected
that the jury assess the penalty in this case, I respectfully ask that you call my attention now
to your position. If you have elected the jury assess punishment in this case.

 

 Defense Counsel: Your Honor, as a matter of law, the court assesses punishment in these
circumstances.

 

 The Court: And, therefore, there's no reason why the jury should not now be discharged,
correct?

 

 Defense counsel: None that I know of, Your Honor.


 The trial court then discharged the jury. Both the State and defense counsel indicated that they
would offer no evidence on the question of punishment. The State then presented argument on punishment,
followed by defense counsel's "argument," which, in its entirety, was as follows: "Your Honor, indeed you
did hear the facts of this case. And you've heard several hundred pleas, probably. We believe that you
can adequately assess the punishment well within the range provided by law." The trial court assessed
appellant's punishment at confinement for ninety days, probated, and a fine of $1,000. The following then
occurred:

 Defense Counsel: Your Honor, I have one question.

 

 The Court: Go ahead, Mr. Hoover.

 

 Defense Counsel: At one time you pronounced the sentence at ninety days confinement,
probated for two years. And then you said ninety days, probated for eighteen months.

 

 The Court: I thank you for calling my attention to the error. Is [sic] the judge's intention
that the period of [community] supervision be for eighteen months, not twenty-four months
or two years. And to the extent that it was described orally differently, it is not to be
regarded. The period of supervision is for eighteen months.


 On direct appeal, appellant, citing both United States v. Cronic, 466 U.S. 648 (1984), and
Strickland v. Washington, 466 U.S. 668 (1984), argued for the first time (6) that he had been denied his
Sixth Amendment right to the effective assistance of counsel because "the refusal of counsel to participate
in the trial" resulted in "no adversarial testing of the prosecution's case." "In this case," appellant continued,
"there was no trial strategy [on counsel's part]. Counsel was [simply] unprepared to go forward and
repeatedly informed the trial court of his reason for not participating." Finally, appellant argued that, "[i]n
these circumstances," prejudice to the defense "is irrefutably presumed."

 The State argued in response that, "[b]ecause the appellate record contain[ed] no evidence of trial
counsel's reasons for his actions, Appellant [was] unable to rebut the strong presumption of [trial counsel's]
competence." The State also argued, in a cross-point, that the trial court had erred in "exclud[ing] a jury
instruction on the per se definition of intoxication." See Tex. Code Crim. Proc. 44.01(c).

 The Fifth Court of Appeals, in an unpublished opinion, overruled appellant's point of error and
affirmed the judgment of the trial court. Cannon v. State, No. 05-04-01479-CR (Tex.App. - Dallas
2005). The court of appeals explained its decision as follows:

 "Although defense counsel at various times stated he was 'not ready,'
'unprepared,' and 'could not effectively represent his client,' appellant points to no specific
errors of counsel that prejudiced appellant, except for the lack of cross-examination. 
Often, [however,] the decision to not cross-examine a witness is the result of wisdom
acquired by experience in the combat of trial.

 "Moreover, on the second day of trial, defense counsel did participate. Counsel
moved for an instructed verdict due to the State's failure to carry its burden of proof. He
cited cases to the court and provided the court with copies of those cases. Counsel also
pointed out to the trial court its mistake in sentencing which would have adversely affected
his client. In light of the evidence against his client for which he may have had no defense,
notwithstanding his comments, defense counsel's actions could have been the product of
a reasonable tactical judgment. Without a fully developed record, we could only speculate
as to counsel's strategy. This we refuse to do.

 "The right to the effective assistance of counsel is not recognized for its own sake,
but because of the effect it has on the ability of the accused to receive a fair trial. Absent
some effect of challenged conduct on the reliability of the trial process, the Sixth
Amendment guarantee is generally not implicated. Appellant does not specify how the
challenged conduct affected the reliability of the trial process, nor may we presume such
effect based on the external constraint of the trial court putting appellant to trial.

 "Based on the standard set out in Cronic, appellant has not met his burden to
demonstrate his claimed constitutional violation that he did not receive a fair trial. Nor has
appellant presented us with a record sufficiently developed to meet his burden under
Strickland to show he was prejudiced by specific errors of counsel. We resolve
appellant's issue against him." Id., slip op. at 13-14 (citations and some internal
punctuation omitted).


Because of its disposition of appellant's point of error, the court of appeals did not reach the State's cross-point.

 Appellant later filed a petition for discretionary review containing three grounds for review, two of
which we granted. (7) See Tex. R. App. Proc. 66.3(c). In his petition and accompanying brief, appellant
argues that the court of appeals erred in failing to recognize that "the total lack of participation by defense
counsel constitute[d] ineffective assistance" under both United States v. Cronic, 466 U.S. 648, and
Strickland v. Washington, 466 U.S. 668. He further argues that, given the record of defense counsel's
deficient performance at trial, there is no need "to develop any other testimony by post-conviction writ." 
 In its response brief, the State argues:

 "The court of appeals did not err in finding Appellant was not denied his Sixth
Amendment right to counsel under either the Cronic or Strickland standards. Appellant
was not constructively denied counsel under Cronic because trial counsel was acting on
Appellant's behalf and exercising effective trial strategy throughout the proceedings.[ (8)]
Furthermore, counsel deserves the opportunity to explain his representation before being
denounced as ineffective under Strickland. Additionally, Strickland requires that
prejudice be demonstrated on the face of the record, and the record in the instant case
does not show prejudice as a result of counsel's actions."


The State also argues that a finding of ineffectiveness of counsel in this case would encourage other defense
counsel to engage in the kind of behavior at issue. The State cites United States v. Sanchez, 790 F.2d
245 (2nd Cir. 1986); Martin v. McCotter, 796 F.2d 813 (5th Cir. 1986); and Warner v. Ford, 752 F.2d
622 (11th Cir. 1985), in support of its various arguments. 

 The Sixth Amendment to the Constitution of the United States provides that, "[i]n all criminal
prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The
Sixth Amendment right to counsel applies to, among other proceedings, state criminal prosecutions in
which, as in the instant case, the defendant is accused of a misdemeanor and a sentence of incarceration
is actually imposed. Scott v. Illinois, 440 U.S. 367, 373 (1979). This right to counsel is not merely the
right to have counsel physically present in the courtroom; it is the right to have the effective assistance of
counsel in the courtroom. McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970).

 In the usual case, an appellant, in order to obtain a reversal of his conviction on the ground of
ineffective assistance of counsel, must demonstrate both deficient performance and prejudice. That is, he
must demonstrate that: (1) defense counsel's performance fell below an objective standard of
reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different. Strickland v. Washington, 466 U.S. at 687. (9) 
However, if an appellant can demonstrate that defense counsel "entirely fail[ed] to subject the prosecution's
case to meaningful adversarial testing," so that there was a constructive denial of the assistance of counsel
altogether, then prejudice, because it is "so likely," is legally presumed. United States v. Cronic, 466 U.S.
at 658-659. See also Bell v. Cone, 535 U.S.685, 696-697 (2002) (noting that, under Cronic, defense
counsel's failure to test the prosecution's case must be "complete" before prejudice is presumed);
Strickland v. Washington, 466 U.S. at 692 ("constructive denial of the assistance of counsel altogether
is legally presumed to result in prejudice"); Ex parte McFarland, 163 S.W.3d 743, 752-753
(Tex.Crim.App. 2005) (discussing constructive denial of counsel and presumed prejudice). (10)

 In determining whether defense counsel "entirely fail[ed] to subject the prosecution's case to
meaningful adversarial testing," we are guided by the following passage in Cronic:

 "[T]he adversarial process protected by the Sixth Amendment requires that the
accused have 'counsel acting in the role of advocate.' The right to the effective assistance
of counsel is thus the right of the accused to require the prosecution's case to survive the
crucible of meaningful adversarial testing. When a true adversarial criminal trial has been
conducted - even if defense counsel may have made demonstrable errors - the kind of
testing envisioned by the Sixth Amendment has occurred. But if the process loses its
character as a confrontation between adversaries, the constitutional guarantee is violated." 
466 U.S. at 656-657 (citation and footnotes omitted).


 In the usual case in which an ineffective-assistance claim is made, "the record on direct appeal will
not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic
decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." 
Bone v. State, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). However, there are rare ineffective-assistance cases in which the record is sufficient for an appellate court to make a decision on the merits. 
Andrews v. State, 159 S.W.3d 98, 101-102 (Tex.Crim.App. 2005).

 This is one of those rare cases. Here, defense counsel, at the start of voir dire, moved for a
continuance and for recusal of the trial court judge. The trial court first denied the motion for recusal and
then, a few moments later, it denied the motion for continuance. Immediately after the trial court denied
the motion for recusal, defense counsel declared that he was "not ready for this trial," that he would "be
unable to effectively represent [his] client," and that he could, therefore, "not participate" in the trial. 
Thereafter, defense counsel declined to participate in jury selection, declined to enter a plea for his client,
declined to make an opening or closing argument to the jury, declined to cross-examine any of the State's
witnesses, declined to make any objections, declined to offer any defense, declined to request any special
jury instructions, and declined to offer any evidence or argument with respect to punishment. On the other
hand, defense counsel did move for an instructed verdict, and he did bring to the trial court's attention the
trial court's mistake in sentencing, which could have affected appellant.

 Defense counsel, throughout appellant's trial, repeatedly stated the reason for his behavior: he was
simply unprepared to go forward. We take counsel at his word and will not speculate that he may have
had some other motive for his behavior. We also note that the record contains no suggestion that appellant
failed to cooperate with defense counsel, or that appellant directed, agreed with, or acquiesced in defense
counsel's behavior.

 We hold that defense counsel's behavior, considered as a whole, constructively denied appellant
his Sixth Amendment right to the effective assistance of counsel. Defense counsel, although physically
present in the courtroom at all the requisite times, effectively boycotted the trial proceedings and entirely
failed to subject the prosecution's case to meaningful adversarial testing. By his refusal to participate,
defense counsel abandoned his role as advocate for the defense and caused the trial to lose its character
as a confrontation between adversaries. Prejudice to the defense is legally presumed.

 The State's reliance upon United States v. Sanchez, 790 F.2d 245; Martin v. McCotter, 796
F.2d 813; and Warner v. Ford, 752 F.2d 622, is misplaced, because those cases are distinguishable on
their facts. In United States v. Sanchez, the defendant, Ramon Sanchez, was indicted for several drug
offenses and, after deliberately absenting himself, was tried in absentia over his court-appointed attorney's
objection. Defense counsel, who had little opportunity to consult with Sanchez before he disappeared,
chose to remain silent throughout the trial, except that he moved for a judgment of acquittal and he objected
to the court's instructions to the jury regarding Sanchez's absence. Sanchez was convicted and later
appealed. On appeal, Sanchez argued that his attorney's silence at trial denied him the effective assistance
of counsel. The United States Court of Appeals for the Second Circuit disagreed, explaining that Sanchez
failed to show that his attorney's representation was deficient:

 "[H]ere, there is no evidence that Sanchez made any effort to communicate with
or otherwise cooperate with his attorney. There is no evidence that Sanchez consulted his
attorney regarding his decision not to attend the trial, and not to be available during the
weeks preceding trial. Where an attorney is confronted with such a client, whose
uncooperativeness precludes any reasonable basis for an active defense, the strategy of
silence - perhaps in hopes that the government will produce insufficient evidence or that
the government or court will commit reversible error - may actually constitute a
[reasonable] defense strategy. Certainly the right to counsel does not impose upon a
defense attorney a duty unilaterally to investigate and find evidence, or to pursue a fishing
expedition by cross-examination, or to present opening or closing remarks on the basis of
no helpful information, or to object without purpose, on behalf of an uncooperative and
unavailable client.

 * * *


 "Sanchez attempts to distinguish his case from cases following the Strickland two-part analysis by arguing that in effect he had no counsel at all. We find this argument
unpersuasive. Certainly Sanchez may not by his absence effectively force his attorney into
a strategy of silence and then complain that he was denied counsel.

 * * *


 "[W]here, as here, the defendant by his own obstructive conduct precludes his
counsel from pursuing an intelligent active defense, the concerns of [United States v.]
Cronic . . . are not invoked, and the [Strickland] test of effectiveness of counsel applies." 
United States v. Sanchez, 790 F.2d at 253-254 (citations omitted).


 In Martin v. McCotter, the defendant, Michael Scott Martin, was tried in state court and
convicted of robbery. He later sought federal habeas relief, arguing that his trial attorney's failure to offer
a closing argument at the punishment stage of his trial constituted a constructive denial of counsel rendering
a showing of prejudice unnecessary under Cronic. The federal district court denied relief, as did the United
States Court of Appeals for the Fifth Circuit, which explained:

 "We conclude . . . that counsel's decision to forego argument at the sentencing
phase of Martin's trial did not constitute a constructive denial of counsel such as to render
a showing of Strickland prejudice unnecessary. Counsel, although silent at the sentencing
stage, did not entirely fail to subject the prosecutor's case to meaningful adversarial testing.
. . . Counsel's active representation of Martin during the guilt-innocence phase was
relevant to the sentencing phase; counsel's representation does not seem so deficient as
to amount to no representation at all." Martin v. McCotter, 796 F.2d at 820 (citations
and some internal punctuation omitted).


 Finally, in Warner v. Ford, Horace Warner and two co-defendants were each charged with theft
and a state firearms violation. The three were tried together in state court, each with his own attorney. 
Warner's attorney, Daniel Kane, was relatively inactive throughout the trial. He did not participate in jury
selection, made no pretrial motions, made no opening or closing argument, cross-examined none of the
prosecution's witnesses, and made no objections. However, Kane, on behalf of his client, moved for a
directed verdict on the firearms count, moved for a mistrial three times, recommended that Warner not take
the stand when called by a co-defendant, questioned one juror during trial, and argued to the court during
sentencing. In contrast, the attorneys for Warner's two co-defendants presented defenses claiming
ignorance of the circumstances of the case and blaming Warner for the crimes. All three co-defendants
were found guilty on all counts. Warner later sought federal habeas relief, claiming that his trial attorney's
relative inactivity constituted a constructive denial of counsel under Cronic. The federal district court
denied relief, as did the United States Court of Appeals for the Eleventh Circuit, which explained:

 "The district court's conclusion that Kane's silent trial tactic was reasonable under
the circumstances is not clearly erroneous. . . . Kane testified [at the habeas hearing] that
although he believed that Warner's case did not have a 'strong fact situation for trial,' he
was prepared to go to trial if necessary. He testified that Warner's substantial prior record
and the overwhelming evidence against all three defendants influenced his decision to
maintain a 'low profile' before the jury. Since Kane knew codefendants' counsel to be
very aggressive trial lawyers, he anticipated they would thoroughly cross-examine the
Government's witnesses. He also arranged for them to 'handle the voir dire' and for
additional peremptory strikes to be given to one of codefendant's [sic] counsel. Kane
testified that he discussed the 'silent strategy' with Warner 'throughout the trial.'

 "Russel J. Parker, the prosecutor against whom Kane tried Warner's case and 15
other criminal cases in 1979, testified favorably to Kane's competence as a defense
attorney. Kane himself testified that he had used the 'silent strategy' with success in
previous multiple defendant trials.

 "In view of all the circumstances here, Kane's representation was not so defective
as to entitle Warner to constitutional relief without a showing that his attorney's conduct
prejudiced him." Warner v. Ford, 752 F.2d at 625.


 As we have shown, the cases relied upon by the State are distinguishable on their facts. The State
can find no logical support in them.

 Our holding today is in accord with the holdings in Martin v. Rose, 744 F.2d 1245 (6th Cir.
1984); United States v. Galinato, 28 M.J. 1049 (N.M.C.M.R. 1989); and State v. Harvey, 692
S.W.2d 290 (Mo. 1985), each of which upheld a claim of ineffective assistance, under Cronic, on facts
essentially identical to those before us today. Our research has found no case denying relief on such facts.

 We are not persuaded by the State's argument that holding as we do today will encourage other
defense counsel to engage in the conduct condemned. Under the Disciplinary Rules of Professional
Conduct, every defense counsel owes to his client his zealousness, competence, and diligence. A defense
counsel failing in those obligations opens himself up to disciplinary proceedings as well as a civil suit for
malpractice. Furthermore, a trial court can meet the threat of attorney non-participation by ascertaining
whether the defendant understands the implications and probable consequences of his counsel's conduct
and whether the defendant is knowingly, intelligently, and voluntarily waiving his right to the effective
assistance of counsel.

 We sustain appellant's grounds for review, reverse the judgment of the court of appeals, and
remand the case to that court so that it may consider the State's cross-point. After it considers the State's
cross-point, the court of appeals shall remand the case to the trial court for a new trial. (11) We also direct
the Clerk of this Court to send a copy of this opinion to the Office of the Chief Disciplinary Counsel of the
State Bar of Texas, so that officials therein may begin such investigation and take such action as they may
deem appropriate.


DELIVERED JANUARY 16, 2008

PUBLISH
1. Defense counsel's oral motion for continuance does not appear in the record, but his
subsequent, written motion for continuance, which does appear in the record, was based on appellant's
need for an expert to assist in the preparation of his defense. See discussion, infra.
2. The court of appeals stated that "[t]he trial judge denied the amended motion to recuse." 
Cannon v. State, No. 05-04-01479 (Tex.App. - Dallas 2005), slip op. at 2. However, we can find
nothing in the record showing that the trial court made any ruling with respect to the amended motion to
recuse.
3. On direct examination, State's witness Curtis Smith, a Wylie police officer, testified as
follows:


 Q: As part of your investigation, did you determine if anybody observed this accident
occur?

 

 A: Yes, I determined that there was a witness who saw it.

 

 Q: What was his name, if you recall?

 

 A: His name was Harold Wyan.

 

 Q: Did you speak to Mr. Wyan?

 

 A: I spoke to him later that night on the phone.

 

 Q: What did he tell you?

 

 A: He said that he was following [appellant's] van eastbound on Parker Road [in Collin
County]. Wyan said he was traveling about fifty miles an hour, and the van was - the
van was pulling away from him.

 [Wyan] estimated that the van was probably traveling fifty-five miles an hour. 
He observed the van drift off to the side of the road and nearly run off the road. The
van then suddenly corrected. 

 Wyan said that he thought the driver was probably tired after he observed this. 
And he observed the van approach the intersection of Country Club [Road] and Parker
Road and showed no indications of slowing down at the stop sign. The van continued
straight through the intersection and collided with the guardrail on the east side of the
road.
4. The record does not reflect the nature of the "Tindall Effect."
5. The court of appeals stated that "[t]he [trial] judge denied the [written] motion for
continuance." Cannon v. State, No. 05-04-01479 (Tex.App. - Dallas 2005), slip op. at 2. 
However, we can find nothing in the record showing that the trial court made any ruling with respect to
the written motion for continuance.
6. An ineffective-assistance claim may be brought for the first time on appeal. Robinson v.
State, 16 S.W.3d 808, 810 (Tex.Crim.App. 2000).
7. We granted appellant's grounds for review numbers one and three. Ground for review
number one reads: "The Court of Appeals erred in holding that Petitioner did not receive ineffective
assistance of counsel because of Counsel's failure to participate at trial." Ground for review number
three reads: "The Court of Appeals erred in finding that the trial record on its face does not support
Petitioner's claim of ineffective assistance of counsel without the need for further factual development
through the post-conviction court of habeas corpus process."
8. The State concedes that defense counsel "remained silent throughout Appellant's trial, except
for a few instances," but argues that counsel's silence could have been a deliberate "strategy of gaining
sympathy with the jury through the appearance of being 'railroaded' by both the trial court and the
State." The State also suggests that defense counsel "could have been unable to present a defense
without the testimony of the expert he requested and thus built in error to ensure reversal and a new
trial." 
9. In some circumstances, none of which is applicable here, a showing that the result would
have been different is not sufficient to show prejudice. See Williams v. Taylor, 529 U.S. 362 (2000).
10. Professors LaFave, Israel, and King have explained:

 

 "[T]he Strickland discussion of prejudice must be read in light of Cronic's
recognition that in extreme situations, as presented in Powell v. Alabama [287 U.S. 45
(1932)], prejudice will be presumed. This 'exception' to the Strickland prejudice
requirement rests on what has been described as a 'constructive denial' of counsel. 
Although defendant is represented by counsel, the circumstances of the representation
are such that defendant, in effect, is lacking the assistance of counsel. In Powell, that
constructive denial of counsel was the product of the nature of the trial court's
appointment of counsel. Lower courts have concluded that a constructive denial also
occurs when counsel is not present during critical stages in the criminal trial. These
rulings involve situations in which counsel consistently fell asleep or simply was tardy,
with the court starting the proceedings without him. Courts have extended this
reasoning also to encompass a counsel who is present but does not do anything." 
W. LaFave, et al., Criminal Procedure § 11.10(d) at 733 (2nd ed. 1999) (footnotes
omitted and emphasis added).
11. Of course, if, after the court of appeals renders a decision on the State's cross-point, either
party files a petition for discretionary review, the court of appeals shall adhere to the requirements of
Texas Rule of Appellate Procedure 68.7.