**Affirmed and Memorandum Opinion filed May 2, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00546-CR

---

**FRANK LAMARCUS ROGERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Cause No. 15965**

---

## M E M O R A N D U M   O P I N I O N

Appellant, Frank Lamarcus Rogers, pleaded guilty to aggravated robbery without an agreed recommendation on punishment. The trial court sentenced appellant to twenty years' confinement in the Texas Department of Criminal Justice-Institutional Division. Appellant appeals his sentence, claiming that (1) the trial court abused its discretion by denying his motion for continuance of the punishment hearing; and (2) his attorney rendered ineffective assistance of counsel

at the punishment hearing.  We affirm.

## I. BACKGROUND

On November 2, 2011, appellant pleaded guilty to aggravated robbery without an agreed recommendation for punishment.  The trial court took the matter under advisement, deferred a finding of guilt, and ordered the preparation of a presentence investigation report ("PSI report").  The punishment hearing was set for March 8, 2012.  Appellant filed a motion for a thirty-day continuance the morning of the hearing and, at the start of the hearing, appellant's attorney informed the trial court that he was moving for a continuance because he had just obtained a copy of the PSI report that morning.  The trial court denied the motion, and proceeded to take the following evidence from the State and appellant.

At approximately 10:00 p.m., on November 29, 2010, as Maricela Garcia and her daughter drove into the subdivision where they lived, Garcia noticed a car that did not look like it belonged there.  Garcia described the car as white with "rims" and very dark tinted windows, "[l]ike a Crown Victoria."  Garcia's subdivision, which has only one way in and out, is small with only about twelve homes, and she knows most or all of her neighbors.  Garcia called 911 to report the other car because she wanted the police to "monitor the area and make sure everything was okay."

Garcia passed the other car as it was coming back from the end of the street.  Garcia was still talking to the 911 operator when she turned into her driveway.  Garcia watched the other car as it made a U-turn and park "in front of a house across the street a little ways down in a vacant lot that's next to our home."  Garcia saw five or six males, wearing masks and bandanas over their faces exit the car and walk toward her car.  They surrounded her car, started banging on the doors, and tried to open the doors.  Garcia saw a gun outside the passenger's side of her car.

2

Garcia's daughter said, "[M]om, they're going to kill us, we need to leave." Garcia started honking the horn and put her car in reverse, hitting a neighbor's truck across the street. The group of males ran back to their car, and Garcia waited until they were driving down the street before she got out of her car to ask the neighbors for help. Garcia was on the phone with the 911 operator during the entire incident.

Officer Benny Simpson of the Mont Belvieu Police Department received a call from his dispatcher regarding a suspicious car in a subdivision. While he was en route, his dispatcher told him that the occupants of that car had attempted to rob someone and left the subdivision. The car turned out of the subdivision in the direction from which Simpson was coming. Simpson saw the car, called for backup, turned around, and followed it until he was able to stop it in secure location away from any individuals. Simpson conducted a felony stop, which "basically means no approach to the vehicle," i.e., the officer maintains his distance, and calls the occupants from the vehicle one at a time. There were six occupants in the car. Officer Blanchard arrived immediately after that to assist.

Another officer spoke to the victims to gain better knowledge about the suspects in the car and informed, via phone conversations, Simpson and Blanchard that the suspects were masked, armed, and wearing hoodies. Simpson recovered masks, bandanas, hoodies, a loaded black 9 millimeter Smith & Wesson pistol, cell phones, and tools from the suspects' car.

Detective Robin Koch of the Mont Belvieu Police Department took statements from each of the suspects, including appellant. Appellant told Koch that they had gone to Dayton earlier that night to see some girls. When they got to Dayton, the girls stood them up, so they headed back towards Baytown. Appellant told Koch they pulled into the subdivision and approached Garcia because they

3

were having car trouble. Appellant told Koch that he knocked on Garcia's car window with a cell phone. Appellant did not tell Koch that a gun was involved in the incident. Koch was concerned about the truthfulness of appellant's statement because he never mentioned a weapon. Koch did not think it was appellant's idea to carry out the robbery, but appellant was not forthcoming regarding the weapon. Koch had no reason to believe that they were having car trouble, and Officer Simpson similarly testified that it did not appear to him that there was anything wrong with the suspects' car.

The PSI report, which included appellant's account of events he gave to the community supervision officer during the PSI interview, was admitted into evidence. According to appellant, the car "messed up" on the way to Baytown from Dayton, and they turned into a subdivision to work on the car. There was no conversation during the drive from Dayton about robbing anyone. One of appellant's companions approached Garcia's car intending to ask to borrow a hammer or other tool to work on their car. Appellant stated that the driver "went crazy" when he knocked on her window with a cell phone. Appellant further stated that Garcia overreacted when she "saw some black men" in her driveway. Appellant also explained that the weapon found in the car belonged to another occupant, Christian Earvin, and he was not aware of the weapon until the police stopped them, and Earvin asked him to hide it under the seat.

During the punishment hearing, appellant testified that there was something wrong with their car, and they approached Garcia for help. Appellant claimed that it was not his intention to rob anyone, but he was influenced by the rest of people in the car. Appellant was wearing a mask, and he had a loaded gun, but it was on "[his] waist, right [his] pocket." Appellant stated that he tapped the driver's side window with his cell phone, but he did not try to open the car door.

4

The court also considered evidence of appellant's background and criminal history. The PSI report set forth appellant's criminal history. It showed two juvenile offenses, one for criminal mischief and one for burglary of a vehicle; appellant was age 13 and 15, respectively, when he committed the juvenile offenses. At the time of the current offense, appellant was 17 years old. The PSI report further showed that appellant was (1) arrested for failure to appear for the instant offense on April 14, 2011; (2) arrested for failure to attend school on August 3, 2011; (3) charged with assault on August 27, 2011, but the Harris County District Attorney rejected the case due to the victim's refusal to cooperate; (4) questioned by police and identified as a suspect in two burglary of habitation cases that occurred on August 29, 2011, and September 27, 2011; and (5) arrested for evading arrest on September 28, 2011, and sentenced to six days in the Harris County jail. With the exception of the arrest for failure to attend school, appellant did not disclose these incidents during the PSI interview.

At the punishment hearing, appellant admitted that he was arrested for evading arrest in September 2011, and sentenced to six days in jail. In August 2011, appellant had an arrest for failure to attend school and a "drug paraphernalia arrest." Appellant denied being caught burglarizing a vehicle in February 2011, being arrested for assaulting the mother of his child in August 2011, or being arrested or questioned for burglary of a habitation.

Appellant was questioned at the punishment hearing about the reference in the PSI report to the assault of "Crystal" and the statement that she is the mother of his child. Appellant testified that he knew Crystal, but she is not the mother of his six month old son, Christina Palmer is. Appellant denied knowing anything about a report of Crystal being assaulted, and he claimed that assault charges were never brought against him.

5

Appellant testified at the punishment hearing that he does not have a high school diploma or GED. He was not allowed to return to school because he was "an endangerment" to the other students. His mother tried to enroll him in GED classes, but it never happened because "they ain't free" and his family's financial situation was not good. However, appellant nonetheless intends to get a GED, but he does not "have any sort of plan, or road map." Appellant looked for work in 2011, but no one would hire him with this charge pending. At the time of the punishment hearing, appellant had been working sporadically for a month as a busboy.

Appellant testified that he had been performing community service at a church in Anahuac by changing light fixtures, doing yard work, and helping with food drives. Reverend Lloyd Anthony Walters operates the Lily of the Valley Church of God in Christ in Anahuac, where appellant had been performing community service. Walters testified that appellant contacted him in August 2011, about doing volunteer work. Walters did not know that appellant had pleaded guilty in September 2011. When asked if he thought appellant "is a life worth saving," Walters responded that he did not know appellant very well. Walters advised appellant that he needed to change his lifestyle, but he did not think appellant took the things he said to heart.

At the conclusion of the punishment hearing, trial court found appellant guilty of aggravated robbery and assessed appellant's punishment at twenty years' confinement. Appellant filed a motion for new trial alleging that his trial counsel rendered ineffective assistance of counsel at the punishment hearing. No hearing was held on the motion for new trial, and it was overruled by operation of law.

6

## II. MOTION FOR CONTINUANCE

In his first issue, appellant avers that the trial court committed reversible error by denying his motion for continuance when he had not timely received a copy of the PSI report.

We review the trial court's ruling on a motion for continuance for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). In order to show reversible error predicated on the denial of a motion for continuance, a defendant must demonstrate both that (1) the trial court erred in denying the motion; and (2) the lack of a continuance harmed him. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010).

Satisfying the first prong—the trial court erred in denying the motion—"most likely requires a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Id.* (internal quotations and citation omitted).

To satisfy the second prong—the lack of a continuance caused harm—an appellant must show that the trial court's ruling actually prejudiced his defense. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1997); *Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995). A showing of harm requires the defendant to demonstrate "with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had." *Gonzales*, 304 S.W.3d at 842 (internal quotations and citation omitted). Ordinarily, a defendant can make a showing of harm only at a hearing on a motion for new trial because only then will he be able to produce evidence showing what additional information, evidence, or witnesses he would have had available if the trial court had granted the continuance. *Id.* at 842–43.

The morning of the punishment hearing, appellant filed a written motion for continuance asking the trial court to continue the punishment hearing for thirty days. In the motion, appellant's attorney stated that he (1) had just received the PSI report the morning of the punishment hearing, March 8, 2012, even though the community supervision officer had mailed it on February 27, 2012; (2) "was completely unaware of" two juvenile arrests for criminal mischief and burglary of a vehicle, both of which were referred to the 315th District Court and later non-suited; (3) was not aware that the confessions of two of appellant's co-defendants, Timothy Lewis and Alex Felix Joseph, would be available and used in the PSI report; and (4) needed an opportunity to subpoena one of appellant's co-defendants, Timothy Lewis, but had learned that Lewis was in TDCJ-ID serving a sentence on a charge from Harris County.

At the beginning of the punishment hearing, appellant's attorney informed the trial court that he was moving for a continuance because he had only just obtained a copy of the PSI report that morning from the community supervision officer who had prepared it. Appellant's attorney explained that, although the officer said she had mailed it on February 27, he still had not received it in his office. He stated that the PSI report contained "some juvenile arrests" of which he was not aware, and it included the confession of a co-defendant, whom he had not had the opportunity to confront, which he believed was material to sentencing. Appellant's attorney explained: "Had we known that the confessions [sic] of that witness or that co-defendant was going to be used, certainly we would have subpoenaed him so that we'd have an opportunity to confront him on the confession that he wrote."

The prosecutor responded that the written statements of all the defendants arrested that night were in her file, and appellant's attorney had reviewed her file

8

on several occasions. The prosecutor further responded that she was not responsible for appellant's failure to disclose to his attorney that he had a juvenile record, but that information was in her file as well. The trial court denied the motion for continuance.

On appeal, appellant claims that he was harmed because his attorney did not have adequate opportunity to counter his co-defendants' written statements, which, "when unchallenged in open court, indicated a more substantial involvement in the robbery than Appellant had admitted in his own written statement." Appellant further alleges that his trial attorney, who was not aware of the two juvenile arrests, did not have an opportunity to show definitive proof that the alleged conduct was never prosecuted.

We conclude that appellant has not shown that the trial court erred by denying his motion for a thirty-day continuance of the punishment hearing. *See id.* at 843 (a showing of trial court error requires that the case made for a delay of the proceeding was "so convincing that no reasonable judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial"). Appellant's attorney argued to the trial court that the PSI report included "some juvenile arrests" of which he was not aware, but he did not specifically argue how that would affect his representation of appellant. Appellant's attorney further argued to the trial court that he did not know that the confession of a co-defendant would be included in the PSI report, and he wanted an opportunity to confront that co-defendant because he believed that the confession was "material [to] the sentencing." However, he did not explain how the co-defendant's confession was material. Moreover, the prosecutor pointed out to the trial court that the information of which appellant's attorney claimed to be unaware was in the State's file, which appellant's attorney had

reviewed on multiple occasions.

We also conclude that appellant has not shown that the trial court's denial of his motion for continuance caused him harm. *See id.* Appellant did not complain of the denial of his motion for continuance in his motion for new trial. A defendant ordinarily only shows harm at the hearing on a motion for new trial because he will be able to produce evidence showing what additional information, evidence, or witnesses he would have had available if the trial court had granted the continuance. *Id.* at 842–43. Although appellant asserts on appeal that he needed more time to counter his co-defendants' written statements, he does not state specifically what it was in those statements that he planned to challenge. Appellant further claims that he needed more time because his attorney did not have the opportunity to show definitive proof that the alleged conduct related to the two juvenile arrests was never prosecuted, but he does not explain what proof he would have offered that he was not prosecuted for the juvenile offenses had the trial court granted a thirty-day continuance. Based on this record, we conclude that the trial court did not abuse its discretion by denying appellant's motion for a continuance. We overrule appellant's first issue.[1]

---

[1] For the first time on appeal, appellant argues that he was denied his statutory right under Article 42.12, section 9(d) of the Texas Code of Criminal Procedure to see the PSI report 48 hours before sentencing. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9(d) (West Supp. 2012) (providing that, "[u]nless waived by the defendant, at least 48 hours before sentencing a defendant, a judge shall permit the defendant or his counsel to read the presentence report"). Furthermore, "[t]he judge shall allow the defendant or his attorney to comment on a presentence investigation or a postsentence report and, with the approval of the judge, introduce testimony or other information alleging a factual inaccuracy in the investigation or report." *Id.* § 9(e).

Appellant did not argue to the trial court that he needed a delay to challenge the factual accuracy of the information in the PSI report. *See id.* Therefore, appellant has not demonstrated harm because he did not receive the PSI report 48 hours prior to the punishment hearing. *See Wyatt v. State*, No. 14-10-00714-CR, 2011 WL 2566359, at *3 (Tex. App.—Houston [14th Dist.] June 30, 2011, no pet.) (mem. op., not designated for publication) (holding the appellant did not demonstrate harm due to the trial court's failure to give the appellant 48 hours to read the PSI

10

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, appellant contends that his trial counsel was ineffective, when, by his own admission, he was not prepared to present an adequate defense at the punishment hearing.

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.051 (West Supp. 2011). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, the appellant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) there is a reasonable probability, sufficient to undermine the confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008). The defendant must prove ineffectiveness by a preponderance of the evidence. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellant contends that his trial attorney rendered ineffective assistance because he did not anticipate that the PSI report would contain the confessions of appellant's co-defendants and he was not aware of appellant's juvenile record. As explained below, appellant has not established that there is a reasonable probability, sufficient to undermine the confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Cannon*, 252 S.W.3d at 348–49.

---

report because he did not argue that he needed additional time to challenge the factual accuracy of the information contained in the PSI report).

Appellant has not explained how cross-examination of any of his co-defendants would have resulted in a different outcome. Appellant told Detective Koch that they pulled into the subdivision and approached Garcia's car because they were having car trouble. Appellant never told Koch that a gun was involved in the offense. Appellant testified that, during the offense, he wore a mask and had a loaded gun, although he claimed that he did not display the gun or use it to bang on the window of Garcia's car. Appellant admitted that he took part in the robbery, but attempted to minimize his role by claiming that he would not have participated but for the influence of his co-defendants.

Furthermore, during the PSI interview, appellant denied that they were trying to rob the victims even though appellant had already pleaded guilty. Instead, appellant stated that the driver "went crazy" when he knocked on her window with a cell phone, and she overreacted when she "saw some black men" in her driveway. Moreover, contrary to his testimony, appellant also stated in the PSI interview that the gun belonged to one of his co-defendants.

Appellant also does not explain how his attorney's being able to present proof that appellant was not prosecuted for his juvenile offenses would have resulted in a different outcome. Appellant admitted during the hearing that he had been arrested for at least three offenses while he was out on bond for the aggravated robbery charge, and he was sentenced to six days in jail for one of those offenses. Moreover, the PSI report showed appellant was arrested, charged, and questioned in connection with other additional offenses while he was out on bond for this offense. Except for one offense, appellant did not disclose any of these offenses during the PSI interview.

Appellant further argues that his trial attorney rendered ineffective assistance because had not adequately interviewed Reverend Walters. Appellant complains

12

that Walters "did not say a single positive thing about" him. For example, when appellant's attorney asked Walters if appellant's life was worth saving, Walters responded, "I don't know [appellant] very well." Walters further testified: "I've been pastoring here almost 29 years and I've seen so many young men coming to this judicial system. I'm going to change, I'm going to change, I'm going to change. Then once they get out of the judicial system they continue doing the same thing." Appellant avers that sponsoring Walters as a defense witness could not have been sound trial strategy. However, Walters was able to confirm that appellant performed community service at his church. Given appellant's testimony, statements to the police, and statements in the PSI interview, appellant cannot show that the outcome of the hearing would have been different.

For example, appellants' punishment does not reflect that the result would have been different. Aggravated robbery is a first degree felony with a punishment range of confinement for five to ninety-nine years, or life, and a fine not to exceed $10,000. TEX. PENAL CODE ANN. §§ 12.32, 20.03 (West 2011). The trial court assessed appellant's punishment at twenty years' confinement and no fine, which is on the lower end of the range of punishment for this offense. When the trial court pronounced sentence, it stated that it disagreed with the prosecutor "that this is a maximum sentence case because I can't lock you up forever because it's not that kind of case." The trial court further explained that it was not credible for appellant to "arm yourself, mask yourself, terrorize these women to go and find out how they can get your tire out of a wheel well." Appellant has not shown by a preponderance of the evidence that the outcome of the punishment hearing would have been different but for his trial attorney's alleged errors. We overrule appellant's second issue.

Having overruled both of appellant's issues, we affirm the judgment of the trial court.

/s/ Sharon McCally
   Justice

Panel consists of Justices Christopher, Jamison, and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).