**Affirmed and Memorandum Opinion filed August 27, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00399-CR

---

## ANTHONY LOUIS O'CONNOR, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause No. 11-CR-0145**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Anthony Louis O'Connor of the felony offense of indecency with a child by exposure, and the trial court sentenced him to seven years' confinement in the Texas Department of Criminal Justice (TDCJ), Institutional Division. Appellant asserts that the trial court abused its discretion by denying his motion for new trial and that the evidence is legally insufficient to support his conviction. We affirm.

BACKGROUND

Appellant is the father of the complainant, N.O., and N.O.'s brother. Appellant lived with his grandmother at the time of this incident, which was alleged to have occurred on or about August 14, 2010, when N.O. was five years old.[1] He and the children's mother, who were never married, had broken up a few years before the incident that is the basis of this case occurred. The children had little to no contact with appellant for some time after appellant and their mother broke off their relationship, but their mother began permitting them to see appellant at some point before this offense occurred. Their mother eventually began allowing the children to stay overnight with appellant. According to the children's mother, after August 2010, appellant did not ask to see his children again.

Following a school day in November that year, N.O. was supposed to be practicing tying her shoelaces. She preferred to be watching television rather than cooperating with her mother. Her mother became annoyed with N.O. and told her that if N.O. didn't do as she was told, her mother would pack N.O.'s "stuff and make [N.O.] go stay at [her] dad's house." In response, N.O. became "hysterical," cried, and screamed. She told her mother that appellant got drunk and did "nasty things." N.O. said that appellant "put[] lotion on his privates" and "tried to kiss her on the mouth."[2]

N.O.'s mother quickly reported N.O.'s outcry to the Texas City Police Department. She filed a report and spoke with an officer. The case was assigned to a Texas City Police detective. During the detective's investigation, N.O. was

---

[1] N.O. was six years old at the time of appellant's trial.

[2] At trial, N.O.'s stepfather, who was her mother's boyfriend at the time N.O. outcried to her mother, also testified. He was present when N.O. outcried to her mother, and he corroborated N.O.'s mother's description of N.O.'s outcry.

interviewed by a forensic investigator and had a medical examination. N.O. was unable to provide a specific date for the offense, and no physical evidence was collected during her medical exam. The detective spoke with appellant, who denied masturbating in front of his daughter. Appellant also told the detective that someone lived with him. The detective asked appellant to have this individual come into the police department to provide a statement, but this person never called or came into the department. After the detective presented the findings of his investigation to the Galveston County District Attorney's Office, including the videotaped interview of N.O. conducted by the forensic investigator, the District Attorney's Office determined that charges of indecency with a child would be filed against appellant.

Appellant was indicted by a grand jury in January 2011 for this offense. He was arrested that month and bonded out of jail. The charges were later enhanced by a prior felony conviction for possession of a controlled substance. At appellant's trial in March 2012, in addition to the above-described evidence, N.O. testified that she visited appellant at his grandmother's house.[3] She said that she spent the night there with her brother. She stated that she and her brother slept on appellant's bed with him. She was unable to remember what happened the last time she was at his house, although her mother testified that the last night the children spent at appellant's house was the night of August 13, 2010.[4]

N.O. acknowledged that something uncomfortable happened to her one night when she and her brother were staying at appellant's and his grandmother's home. According to N.O., appellant came into the room while she was watching

---

[3] N.O. referred to appellant's grandmother as his mother.

[4] N.O.'s mother testified as N.O.'s outcry witness. She also explained that August 13, 2010 was her son's—N.O.'s brother's—birthday and that she had picked up both children on the morning of August 14, 2010.

3

television in his bed. She stated that she believed that appellant moved her brother, who was sleeping in the bed, to the floor. N.O. testified that appellant lay down on the bed, told her to hand him some baby lotion, and "rub[bed] it on [his] middle part."[5] The record reflects that N.O. indicated the "middle part" on a male figure as the genitals.

N.O. testified that appellant was wearing clothes when he lay down on the bed, but that he pulled down his pants and underwear. She specifically recalled what appellant was wearing—a white shirt and black jeans with blue boxer underwear. She described appellant's "middle part" as being "long" and "pointing up." N.O. testified that she could not remember how long appellant rubbed the lotion on his "middle part." She stated that she got on the floor by her brother because she was scared. According to N.O., appellant crawled on the floor and said, "Give me a kiss." N.O. complied by giving him a kiss on the cheek. She testified that she told her mother about this incident later, when she was tying her shoelaces.

After hearing the evidence and argument of counsel, the jury found appellant guilty as charged in the indictment. The trial court conducted a punishment hearing and, after hearing the testimony and evidence, sentenced appellant to seven years' confinement in the TDCJ's Institutional Division. Appellant timely filed a motion for new trial, in which he alleged his trial counsel was ineffective.[6] The trial court denied the motion following a hearing. This appeal timely ensued.

---

[5] N.O. stated that she retrieved the lotion from a drawer in the dresser beneath the television set. She described the lotion bottle as light purple with a darker purple lid.

[6] We describe the testimony from the hearing on the motion for new trial in our analysis of appellant's challenge to the trial court's denial of this motion, which we address after discussing the sufficiency of the evidence.

In appellant's second issue, he asserts that the evidence is insufficient to support his conviction. When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the conviction and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony. *See Isassi*, 330 S.W.3d at 638. Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Id.*

As alleged here, a person commits the offense of indecency with a child younger than seventeen years of age if, with intent to arouse or gratify the sexual desire of any person, that person exposes any part of his genitals knowing the child is present. *See* Tex. Penal Code § 21.11(a)(2)(A). Appellant only challenges the "intent to arouse or gratify the sexual desire of any person" element of this offense. No oral expression of intent to arouse or gratify sexual desire is necessary; the conduct of the appellant is itself sufficient from which to infer intent. *See Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd). Further, a conviction for indecency with a child is supportable by the uncorroborated testimony of a victim if the victim is seventeen years of age or younger, as occurred here.[7] *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1).

---

[7] Moreover, as discussed above, N.O. outcried to her mother within months of the incident. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a) (providing that a conviction under

As described above, N.O. testified that appellant exposed his genitals to her, asked her to hand him baby lotion, and rubbed the lotion on his genitals in front of her. She described his genitals as being "long" and "pointed up." She further testified that, when she removed herself from the bed because she was scared, appellant followed her to the floor and asked her for a kiss. From this testimony, a rational jury could have determined that appellant was aware his five-year-old daughter was present when he exposed his genitals and rubbed lotion on his sexual organ, evidence from which a jury could have reasonably inferred appellant intended to arouse or gratify his sexual desire. *See* Tex. Penal Code § 21.11(a)(2)(A); *Bazanes*, 310 S.W.3d at 40. Indeed, based on her description of his sexual organ, the jury further could have rationally inferred that appellant was actually sexually aroused when he committed this offense.

In short, considering this evidence in the light most favorable to the jury's verdict, a rational fact finder could have found the elements of the offense beyond a reasonable doubt. *See Isassi*, 330 S.W.3d at 638. Accordingly, we overrule appellant's second issue.

## MOTION FOR NEW TRIAL

In his first issue, appellant asserts that the trial court abused its discretion in denying his motion for new trial. As noted above, appellant timely filed a motion for new trial asserting that his trial counsel, Paul Love,[8] was ineffective. Specifically, he asserted that Love failed to interview and call appellant's grandmother, eighty-two-year-old Lorraine McColthern, as a fact witness at the

---

chapter 21 is supportable on the uncorroborated testimony of the victim if the victim informed any person other than the defendant, of the alleged offense within one year after the date on which the offense allegedly occurred).

[8] Love withdrew after appellant was convicted, and appellant was appointed new counsel shortly thereafter.

6

guilt-innocence phase of his trial.[9]  The trial court heard the motion for new trial on May 29, 2012.

When a defendant raises the issue of ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion.  *Rodriguez v. State*, 329 S.W.3d 74, 81 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  We review the evidence in the light most favorable to the trial court's ruling, and we will reverse only if no reasonable view of the record could support the trial court's ruling.  *Id.*

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.051. This right necessarily includes the right to reasonably effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on an ineffective assistance claim, the defendant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) there is a reasonable probability, sufficient to undermine the confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different.

---

[9] Appellant attached an affidavit from McColthern to his motion, in which she stated she was prepared to testify as a fact witness concerning N.O.'s testimony about appellant masturbating in front of her.  In her affidavit, she provided detail regarding what her testimony would have been and stated that Love had never interviewed her despite meeting with her at least four times prior to appellant's trial.  She stated that she had asked Love during the State's case in chief when she would be called to testify and that Love informed her she could not testify because she had been watching the trial.

Appellant also asserted in his motion that Love failed to call other potential fact witnesses.  But appellant did not attach affidavits from these witnesses to his motion, nor did these witnesses testify at the hearing on the motion.  A claim for ineffective assistance of counsel may not be predicated on a failure to call witnesses unless the defendant shows such witnesses were available and their testimony would benefit him.  *Ex parte Flores*, 387 S.W.3d 626, 638 n.54 (Tex. Crim. App. 2012).  Thus, appellant may not base his ineffectiveness claim on Love's failure to call these witnesses.

*Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008). The defendant must prove ineffectiveness by a preponderance of the evidence. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *see also Ex parte Rogers*, 369 S.W.3d 858, 862 (Tex. Crim. App. 2012) ("Because there are countless ways to provide effective assistance of counsel, judicial scrutiny of trial counsel's conduct must be highly deferential." (internal quotations and citations omitted)).

The decision to call a witness is generally a matter of trial strategy. *State v. Thomas*, 768 S.W.2d 335, 337 (Tex. App.—Houston [14th Dist.] 1989, no pet.). Counsel's decision not to call a witness is not insulated from review, but unless a defendant overcomes the presumption that counsel's actions were based in sound trial strategy, counsel will generally not be found ineffective. *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012).

At the hearing, Love acknowledged that he did not hire an investigator in this case. He stated that he spoke to appellant's grandmother, McColthern, several times. He explained that he learned a few weeks before trial through appellant that there may have been a party or some people present at appellant's grandmother's house on August 14, 2010.[10] According to Love, prior to trial, "there was no specific information provided to [him] that she was present on the August 14th

---

[10] N.O.'s mother testified that N.O.'s brother's birthday was August 13, 2010 and that she picked the children up on August 14, 2010. This testimony was undisputed. The indictment alleged that this offense occurred "on or about" August 14, 2010, which is the date the appellant focuses on in his motion for new trial. But it is well settled that the "on or about" language of an indictment permits the State to prove a date other than the one alleged in the indictment, so long as the date is anterior to the presentment of the indictment and within the statutory limitations period. *See Sanchez v. State*, 400 SW.3d 595, 600 (Tex. Crim. App. 2013).

date or there was any type of party that she would have been present on the August 14th date." He admitted that he did not formally interview McColthern, but he stated that when he did speak to her, the information she provided him was that N.O. was lying and that this case was about child support and the vindictiveness of N.O.'s mother.

Love acknowledged that he knew from the beginning that McColthern was probably present when this offense occurred, but that there was no information that she had any substantive information to provide to the case. He stated as follows regarding why he did not call McColthern to testify:

> The reason I did not call her as a witness, not specifically because she was present in the courtroom. The reason I did not call her as a fact witness for the guilt and innocence is because prior to trial there was no substantive information that I could elicit from her that would have aided in [appellant]'s defense.

He reiterated that he spoke with appellant in the presence of McColthern, explained to them what the facts of the case were and what the State would likely present at trial, and talked to both of them. Love testified that the only thing that McColthern said was that N.O. was lying.

On cross-examination by the State, Love explained that his basic trial strategy was centered on the theory that N.O.'s allegations were fabricated because her mother was upset about not being paid child support. Love testified that, after reviewing the affidavit of McColthern and what she was prepared to testify about, he did not believe her trial testimony was consistent with this trial strategy. He stated that the information McColthern provided in her affidavit regarding a party and some drinking involved actually was consistent with N.O.'s testimony.[11] Love

---

[11] N.O. did not testify at trial that appellant had been drinking; however, she testified that appellant was acting "funny." Further, her mother testified that when N.O. outcried to her

9

explained that if McColthern had testified that appellant had been drinking, then the defense would have had to concede some truth to N.O.'s statement, which would have been inconsistent with this trial strategy. Additionally, Love testified that McColthern had difficulty hearing and communicating. He opined that her difficulty in hearing would have been apparent to a jury, which would have made her testimony that she could have heard something "going on" in another room in a different part of her house ineffective to the jury.

McColthern also testified at the hearing on the motion for new trial. The first thing she said to defense counsel was, "Can you talk a little louder?" She also repeatedly responded to questions posed by counsel with, "Huh?" Her testimony focused primarily on the evening of N.O.'s brother's birthday party, which she stated was August 14, 2010.[12] However, she testified that she was a light sleeper and woke up every night about three times to check on the children whenever they were at her home. Appellant also testified at the hearing, focusing on the fact that other witnesses were present on the evening of August 14, 2010.[13] But, as noted above, the State did not have to prove that the offense occurred on this particular date,[14] and N.O. testified that this incident did not occur on the last night she was at appellant's home.

Viewing this evidence in the light most favorable to the trial court's ruling, we cannot say the trial court abused its discretion in denying appellant's motion for new trial. *See Rodriguez*, 329 S.W.3d at 81. Appellant's trial counsel testified that he had a trial strategy, which was that N.O.'s allegations against appellant, her

---

regarding this incident, N.O. said that her father, appellant, did "nasty" things to her when he was "drunk."

[12] *See supra* note 10.

[13] *See supra* notes 9–10.

[14] *See Sanchez*, 400 S.W.3d at 600.

10

father, were fabricated at the urging of her mother in an effort to coerce child support payments from appellant. It does not appear that McColthern's testimony would have added to this strategy. Thus, appellant did not overcome the presumption that Love's decision not to call McColthern was based on sound trial strategy. *See Flores*, 387 S.W.3d at 633. Accordingly, appellant did not establish by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness. *See Cannon*, 252 S.W.3d at 349

In fact, as Love testified, McColthern's testimony would have been that appellant was drinking on the date alleged in the indictment, which could have given credence to N.O.'s mother's description of N.O.'s outcry that appellant did "nasty" things to her when he was drinking. Additionally, N.O. testified that appellant was acting "funny" when he masturbated in front of her, from which the jury may have inferred he had been drinking when the offense occurred. Moreover, had McColthern testified as she stated in her affidavit that she "could hear any voices" in appellant's room, that testimony likely would not have been credible to the jury.[15] Love testified regarding her hearing problems and these problems are apparent on the face of the record from the hearing, as described above. Thus, appellant failed to demonstrate that there was a reasonable probability that, but for Love's unprofessional errors, if any, the result of the proceeding would have been different. *Cannon*, 252 S.W.3d at 349.

---

[15] Indeed, her testimony regarding her ability to hear voices from another room seemingly did not sway the trial court, which was the sole arbiter of the credibility of the witnesses. *Lopez v. State*, 96 S.W.3d 406, 417 (Tex. App.—Austin 2002, pet. ref'd) (citing *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001)).

In short, appellant did not prove either *Strickland* prong.   *See id.* Accordingly, we overrule his first issue.   Having overruled both of appellant's issues, we affirm the trial court's judgment.


                                                        /s/      Sharon McCally
                                                                 Justice


Panel consists of Justices Brown, Christopher, and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).