**Affirm and Opinion Filed August 23, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00038-CR**

**GEOFFREY ROSS RIMES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-80654-2020**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Smith
Opinion by Justice Osborne

Appellant Geoffrey Ross Rimes entered a non-negotiated plea of guilty to possession of methamphetamine. He also pleaded true to two enhancement allegations. The trial court accepted appellant's pleas, found him guilty as charged, found the enhancements paragraphs true, and assessed a sentence of 25 years' confinement. In four issues, appellant contends that his constitutional rights were violated when the hearing on his open plea was held via Zoom. We affirm the trial court's judgment.

## BACKGROUND

The facts pertinent to the offense and enhancements are not in dispute. Appellant made an open plea of guilty to the offense of possession of one gram or more but less than four grams of methamphetamine. He also pleaded true to two enhancement paragraphs in the indictment. The trial court heard appellant's plea via Zoom on January 6, 2021. In the same proceeding via Zoom, the trial court held appellant's punishment hearing.

At the time of the hearing, the Supreme Court of Texas's Twenty-Ninth Emergency Order Regarding COVID-19 State of Disaster, 629 S.W.3d 863 (Tex. 2020), was in effect; it amended and renewed the Twenty-Sixth Emergency Order Regarding COVID-19 State of Disaster, 609 S.W.3d 135 (Tex. 2020). Under the twenty-sixth order, in view of "the imminent threat of the COVID-19 pandemic[,]" Texas courts were generally commanded to "continue to use all reasonable efforts to conduct proceedings remotely." 609 S.W.3d at 135–36. Also under the twenty-sixth order, only remote "jury proceedings" in criminal cases required "appropriate waivers and consent obtained on the record from the defendant and prosecutor." *Id.* at 137.

At the hearing's outset, the trial court advised appellant, "The first thing we're going to do is go through the plea packet that you reviewed with [defendant's attorney] Ms. Tu." The court confirmed that appellant could see the open plea agreement on the screen and that it correctly reflected his plea of guilty to the

–2–

offense. The court also confirmed with appellant that "the sentence is what we're having the hearing on today," the punishment range "is enhanced to 25 to life with two prior punishment enhancement paragraphs," and that "when you're pleading guilty, you're agreeing to the two enhancement paragraphs." Appellant answered "Yes, ma'am," to each question.

The court then reviewed State's Exhibit 100, appellant's open plea agreement. Appellant initialed several paragraphs that were crossed out, including paragraph 15, providing that appellant "[w]aives the right to confront and cross-examine the State's witnesses in open court, and consents to the introduction of evidence against him/her in the form of written and oral stipulations of evidence and testimony, testimony by affidavit, written statements of witnesses, and any other documentary evidence." The court continued,

> THE COURT: We have a waiver of rights and judicial confession. I'm showing you here. Now several of these items were struck through by you and your attorney. You've initialed them there, but I want to clarify on paragraph 15 it says you waive the right to confront and cross-examine the State's witnesses in open court and consent to the introduction of evidence against him. However, I want to clarify. We are all appearing by Zoom remotely. You are there physically in the courtroom, but all of the other witnesses, parties, the Court are appearing via Zoom.
>
> So I want to make it clear that the part that you struck through on this was essentially the remainder of that sentence, **but you are consenting to have your trial proceed today via Zoom, and the witnesses and your attorneys and the judge and the prosecutors appear via Zoom; is that right?**
>
> **THE DEFENDANT: Yes, ma'am.** Well, I'm—so basically what you're saying is that I did not want to cross that out?

–3–

THE COURT: Well, there's a part of it—it's not that you don't want to cross it out. It's—what it's saying is you're not waiving the right to confront witnesses.

So oftentimes, in a plea—so we don't have a packet that specifically relates to what we're doing today which is an open plea. So in a normal plea where you have agreed to plead guilty and you've agreed to the sentence, that's usually—you waive confronting witnesses because you don't have a hearing on the sentencing phase, but we don't have a packet that says that. So your attorney is protecting your rights by saying because it's an open plea and you're only pleading guilty and you have the ability to appeal the sentence, the plea packet that we have doesn't exactly fit our scenario today. So she crossed that out, but we are proceeding essentially with a trial on the sentencing phase today, and there are going to be witnesses. You and your attorney have the ability to confront them and cross-examine them.

**We just are trying to make it clear for the record that everybody understands and agrees that that is happening via Zoom rather [than] physically in person all together in the courtroom.**

**THE DEFENDANT: Okay.**

THE COURT: Ms. Tu, anything we need to clarify on that?

MS. TU: No, Your Honor.

THE COURT: Sir, do you have any other questions about that?

THE DEFENDANT: No, ma'am.

(Emphasis added).

Appellant then pleaded guilty, and confirmed that "I'm pleading guilty because I am guilty, and I want to be accountable and for no other reason, ma'am." The court found "that the evidence and the allegations as alleged in the indictment support Mr. Rimes' plea of guilt, and that he has pled guilty. The Court's going to accept his plea of guilt and find him guilty."

The court then proceeded with the punishment phase. After an opening statement by appellant's counsel, the court instructed appellant,

> THE COURT: Okay. Mr. Rimes, I know you're in a different location than Ms. Tu. If—I'm going to mute you for now, but if you have something happen during the proceeding that you need to speak to her, please, let the bailiff know, and he'll notify us. We'll stop the proceeding. We can put you and Ms. Tu into a breakout room so you can speak privately and ask whatever questions you have.

> THE DEFENDANT: Yes, ma'am. Yes, ma'am. Yes, ma'am. Thank you.

The State then called Officer Jimmy Farias to testify about appellant's arrest. Defense counsel cross-examined the witness, concluded her questions, and then requested "a moment with my client just to that I can make sure that—." The court instructed Officer Farias to "sit tight" in the Zoom waiting room in case there were further questions, then took a recess while appellant and his counsel went into a breakout room.[1] After the break, defense counsel announced that she had no further questions for the officer.

Next, the State called Officer Erin Merritt to testify about the Tango Blast gang; appellant told police he was a member. During defense counsel's cross examination, the court stated, "Hang on, just a second. Ms. Tu, I just opened your breakout room. Your client needs to speak to you." The court then took a recess, after which defense counsel continued cross-examining Officer Merritt. After

---

[1] Although there was an initial technical difficulty, the trial court resolved it quickly and the record does not reflect any further problem with the breakout room procedure.

additional examination by both attorneys, the trial court and defense counsel confirmed with appellant that he did not need to talk to his counsel again before the court excused the officer. Appellant replied that "[w]e have discussed what I want to discuss." Appellant's counsel then released the officer and the State rested.

Appellant called Officer Junwei Sun to testify that appellant was remorseful, wanted to turn his life around, and wrote a letter stating he wanted to cooperate with law enforcement. When counsels' and the court's questioning was completed, the court asked appellant if he needed to speak with his counsel before Officer Sun was released. The record reflects that appellant indicated he did not need to speak with counsel.

Appellant then testified at some length after acknowledging that he was waiving his Fifth Amendment right to remain silent. He acknowledged that he was currently facing a sentence of 25 years to life, but expressed his desire to plead guilty and forego a jury trial in order to take responsibility for his actions. He discussed his desire to turn his life around and obtain "some type of therapeutic help" to become "a productive member of society." He testified, "I've hit my rock bottom," and discussed his desire to enter a treatment center to overcome his problems with substance abuse. He testified that he had written "some recovery essays basically just to let the judge know that I'm serious about recovery," addressed to the trial judge, that were admitted into evidence as Defense Exhibit 5. On cross-examination,

appellant admitted he had been given probation more than once after other offenses and had obtained outpatient treatment in the past.

After closing arguments, the court took a recess to read Defense Exhibit 5. The court then sentenced appellant "to the minimum, the 25 years," explaining that his request to enter treatment was "too little too late." The court expressed hope that appellant would take "the opportunity even from TDC to get some help and have an influence and make an impact" there, "sharing what you know about the choices you made when you got out that landed you right back there." The court explained, "So I appreciate the responsibility and the accountability that you've taken for your actions. . . . I would like to have given you another chance, but it's just too many chances."

The trial court's judgment reflecting the 25-year sentence was entered on January 14, 2021. This appeal followed.

## ISSUES

In four issues, appellant complains of the remote proceedings conducted via Zoom. He contends (1) he did not waive his due process right to be physically present at trial, (2) he did not validly waive his Sixth Amendment right to in-person confrontation of witnesses, (3) he did not validly waive his Sixth Amendment right to the assistance of counsel at trial, and (4) "a trial of a defendant sitting alone in a courtroom while everyone else appears on Zoom is fundamentally unfair."

**DISCUSSION**

**1. Preservation of error**

Before considering appellant's issues regarding his "in-person trial rights," as he describes them, we consider whether he has preserved his complaints for appellate review. In general, to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that stated the specific grounds for the desired ruling if the grounds were not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Herrera v. State*, 599 S.W.3d 64, 67 (Tex. App.—Dallas 2020, no pet.).

There are only a few exceptions to this general rule. In *Marin v. State*, the Court of Criminal Appeals set out rules for preserving error in three categories: (1) absolute systemic requirements and prohibitions, (2) rights that must be implemented unless expressly waived (waivable-only rights), and (3) rights that are implemented upon request. 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). Under *Marin*, "the rules that require a timely and specific objection, motion, or complaint" to preserve error do not apply to the first two, "relatively small categories of errors." *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (discussing *Marin*, 851 S.W.3d at 280). Errors in these two categories may be raised for the first time on appeal. *Id.* But errors in the third category must be preserved by objection at trial. *See id.* at 889.

Appellant's complaints arising from the rights of confrontation and due process fall into *Marin*'s third category. *See Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) (Confrontation Clause claims must be preserved by timely and specific objection). In *Deener v. State*, we explained that "the right of confrontation is a forfeitable right—not a waivable-only right—and must be preserved by a timely and specific objection at trial." 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. ref'd). In *Jones v. State*, this Court concluded that an objection was required to preserve a complaint that appellant was denied his Sixth Amendment right of confrontation when the State's witnesses testified via Zoom. No. 05-21-00019-CR, 2022 WL 854915, at *4 (Tex. App.—Dallas Mar. 23, 2022, no pet.) (mem. op., not designated for publication).[2] And in *Woodrome v. State*, the court concluded appellant's due process complaints, including (1) his complaint that he and his attorney were not physically present in the courtroom because the hearing was held via Zoom and (2) his complaint that he was not specifically advised by the court of his right to an in-person proceeding, were not preserved because appellant did not make a timely objection at trial. No. 13-21-00036-CR, 2022 WL 480246, at

---

[2] In *Jones*, we also distinguished *Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020), cited here by appellant for the proposition that virtual confrontation is insufficient to protect constitutional rights. *Jones*, 2022 WL 854915, at *4. In *Haggard*, a sexual assault nurse examiner testified via Face Time, over defense objections, because traveling to Texas was inconvenient. *Haggard*, 612 S.W.3d at 323–24. The court concluded that the "right to physical, face-to-face confrontation" protected by the Confrontation Clause "cannot be so readily dispensed with based on the mere inconvenience to a witness." *Id.* at 328. In *Jones*, we explained that "[w]e do not read *Haggard* to abrogate" the requirement that the right of confrontation must be preserved by a timely and specific objection at trial. *Jones*, 2022 WL 854915, at *4.

*3 (Tex. App.—Corpus Christi-Edinburg Feb. 17, 2022, no pet.) (mem. op., not designated for publication).

Appellant did not object to proceeding via Zoom. Further, he concedes that the trial court explained that "[w]e are all appearing by Zoom remotely," and "you are consenting to have your trial proceed today via Zoom, and the witnesses and your attorneys and the judge and the prosecutors appear via Zoom," to which he responded, "Yes, ma'am." The trial court confirmed that "[y]ou and your attorney have the ability to confront . . . and cross-examine" witnesses, explaining that "[w]e are just trying to make it clear for the record that everybody understands and agrees that that is happening via Zoom rather [than] physically in person all together in the courtroom." Appellant responded "Okay" and advised the court he had no other questions about "trial on the sentencing phase today" proceeding via Zoom. His counsel also stated there was nothing "we need to clarify on that." Consequently, we conclude appellant has not preserved the complaints he asserts in his first two issues, and we decide those issues against him. *See Jones*, 2022 WL 854915, at *4.

The right to assistance of counsel, however, is a waivable-only right. *See, e.g., Saldano*, 70 S.W.3d at 888. Appellant also argues that his fourth complaint—the "fundamental unfairness" of a trial via Zoom—did not require preservation by an objection at trial. We address these two complaints below.

–10–

## 2. Assistance of counsel

In his third issue, appellant argues he did not waive his Sixth Amendment right to the assistance of counsel at trial. "Waivable-only" rights, such as the right to assistance of counsel, cannot be waived by omission. *Reyes v. State*, 361 S.W.3d 222, 231 (Tex. App.—Fort Worth 2012, pet. ref'd). "Instead, those rights can only be waived by affirmative acts of commission." *Id.* In the context of an indigent's right to counsel under the Sixth Amendment, the Court of Criminal Appeals has explained that a waiver of this right must be made "competently, intelligently, and voluntarily." *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008). The trial court judge must ascertain that the defendant is choosing to waive the right to counsel knowingly and intelligently, and must warn the defendant about the dangers and disadvantages accompanying such a waiver. *Id.*

Here, unlike *Williams*, appellant was not waiving the right to assistance of counsel altogether. *See id.* at 355–56. His contention is that he did not waive the right to assistance of counsel in the same room. We conclude, however, that the trial court clearly explained to appellant that his counsel, like the other participants, would be appearing via Zoom, but appellant could consult with his counsel at any time by letting the bailiff know he would like to do so. Appellant did not object and subsequently utilized the breakout room to consult with his counsel twice. Under similar circumstances, where the trial court "had the means to place [appellant] and her legal counsel in a separate room, so to speak, in which they could converse in

–11–

private," the court in *Cathey v. State* concluded that "we cannot say either that appellant was denied the effective assistance of counsel or that any supposed denial caused harm." No. 07-20-00235-CR, 2021 WL 1376961, at *2 (Tex. App.—Amarillo Apr. 12, 2021, no pet.) (mem. op., not designated for publication).

Citing *Cannon v. State*, 252 S.W.3d 342, 348 (Tex. Crim. App. 2008), appellant argues he had the right to have counsel physically present in the courtroom and the right to effective assistance of counsel in the courtroom. Appellant also cites *United States v. Cronic*, 466 U.S. 648, 658 (1984), for the proposition that the right to assistance of counsel is "sometimes" not subject to a constitutional harm analysis, that is, in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."

In *Cannon*, although counsel was present in the courtroom, he "declined to participate in jury selection, declined to enter a plea for his client, declined to make an opening or closing argument to the jury, declined to cross-examine any of the State's witnesses, declined to make any objections, declined to offer any defense, declined to request any special jury instructions, and declined to offer any evidence or argument with respect to punishment." *Cannon*, 252 S.W.3d at 350. And in *Cronic*, the Court explained that prejudice is presumed where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659.

Here, in contrast, the record reflects counsel's active participation in the proceedings. She cross-examined the State's witnesses, objected to the admission of evidence, made an opening statement and closing argument, and, at least twice, consulted with appellant in a separate breakout room before concluding her cross-examination of the State's witnesses. She offered evidence of appellant's admission to a substance abuse treatment program and appellant's written statements supporting his previous cooperation with authorities and his determination to change his life.

Under these circumstances, we cannot say that appellant was denied the effective assistance of counsel or that any alleged denial caused harm. *See Cathey*, 2021 WL 1376961, at *2 (where trial court extended appellant the opportunity to consult with counsel in a breakout room but appellant did not avail herself of it, court could not conclude that effective assistance of counsel was denied or caused harm); *Broussard v. State*, No. 09-20-00259-CR, 2022 WL 2056388, at *9 (Tex. App.—Beaumont June 8, 2022, no pet. h.) (mem. op., not designated for publication) (where court "fully explained the Zoom procedure" to appellant, including the opportunity to confer privately with counsel in a breakout room, appellant was not denied right to counsel).

We decide appellant's third issue against him.

### 3. Fundamental fairness

In his fourth issue, appellant contends his trial was "fundamentally unfair" because it was held via Zoom. Appellant describes this error as "systemic" and "nonwaivable," arguing that no objection was necessary—or even possible under the circumstances—to preserve his complaint. *See Marin*, 851 S.W.2d at 279.

Appellant contends that because the trial court did not expressly advise him that an in-person proceeding was possible under the applicable supreme court order and county operating plan, his written waivers were ineffective. He argues that "[a] waiver is a choice among alternatives, but the record does not reflect that Appellant was aware of any alternative but to proceed to a virtual and remote trial on punishment." He complains that "[o]nly recently before [his] trial did Collin County acquire the ability to conduct in-person proceedings. But nobody informed [him] about this significant shift in the status quo." Relying on *Hughes v. State*, No. 14-20-00628-CR, 2022 WL 778980, at *6 (Tex. App.—Houston [14th Dist.] Mar. 15, 2022, pet. granted), appellant argues that the Zoom proceedings were "flawed, ineffectual, and unprivileged."

As appellant recognizes, the circumstances in *Hughes*, where the record contained no waivers and Hughes was prohibited from communicating with his counsel during the proceeding, were different. *See id.* at *6–7.[3] Here, appellant

---

[3] The court in *Hughes*, however, declined to hold that a defendant's Sixth Amendment confrontation rights are always violated by Zoom proceedings: "However, we are neither prepared to make blanket

could, and did, consult with counsel, by procedures explained by the court. Although in-person proceedings may have been possible, the applicable emergency order continued the directive to "continue to use all reasonable efforts to conduct proceedings remotely." *See* Twenty-Sixth Emergency Order Regarding COVID-19 State of Disaster, 609 S.W.3d at 135–36, *amended and renewed in* Twenty-Ninth Emergency Order Regarding COVID-19 State of Disaster, 629 S.W.3d at 863. Given the trial court's explanation of the procedures, the court's questions to appellant to ensure he understood the procedures, and appellant's actual use of the procedures to consult with counsel and participate in the proceedings, the concerns expressed by the *Hughes* court were not present here.

Appellant also argues that "some of the greatest problems presented by a remote virtual trial do not fit neatly into the rubric for error preservation." As general examples, he cites:

- Inability to call his attorney's attention to false or misleading testimony during cross-examination,

- Inability to suggest an important area of inquiry made relevant by the dynamics of live testimony,

- Inability to inquire about the meaning of an objection or the significance of a ruling,

- Inability to make discreet communications with counsel,

---

pronouncements in this case nor conclude that a defendant is not present at a proceeding under the Sixth Amendment if he is present via video-conferencing." *Hughes*, 2022 WL 778980, at *6.

–15–

- Inadequacy of "halt-and-recess" as a substitute for consultation with counsel, especially where the defendant is on mute and required to gesture to obtain the court's attention,

- Distorted images, sound disruption, and connectivity problems, and

- Inability to convey sincerity and truthfulness and to make an impression on the court through body language such as eye contact.

But appellant does not explain how any of these potential problems affected the proceedings here. Appellant argues there is "more than a reasonable doubt about the impact of [his] isolated participation in his trial alone in a courtroom while attorneys, witnesses, and the trial judge herself appeared on Zoom." He contends he could not "meaningfully participate in his defense because he was on mute." He contends his "clear strategy" was "to be perceived as a defendant who was not burdening the process," requiring him to "balance his desire to participate with the burden it clearly caused every other member of the Zoom conference" when he availed himself of the opportunity to consult with counsel in a breakout room. He argues that even when he did avail himself of that opportunity, his communications were "potentially unprivileged" because "the record makes clear the bailiff was nearby and logic would dictate jailers were too." And he contends a witness who was to testify about a rehabilitation program appellant could have attended while on probation was lost "due to technical difficulty." He also argues that the trial court's assessment of his credibility, sincerity, and emotional depth was detrimentally affected by his appearance on video rather than in person. Appellant did not object on any of these grounds at trial, nor does he explain why his complaints would not be subject to a

–16–

harmless-error analysis on appeal. *See Lake v. State*, 532 S.W.3d 408, 411 (Tex. Crim. App. 2017) (all errors are subject to harm analysis except for certain federal constitutional errors labeled by the United States Supreme Court as "structural").

Even if we were to assume constitutional error arising from these concerns, we would conclude beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. *See* TEX. R. APP. P. 44.2(a). The record reflects that appellant could, and did, consult with his counsel during the proceedings, including during his counsel's cross-examination of the State's witnesses. After one such consultation, counsel asked the witness additional questions. The record also reflects the court's explanation of how trial would proceed "via Zoom rather [than] physically in person all together in the courtroom," including ensuring that appellant intended to plead guilty to both the offense and the two prior punishment enhancement paragraphs.

The one technical difficulty, a witness in the Zoom "waiting room" who "fell off" before he was called to testify, did not contribute to appellant's punishment. *See* TEX. R. APP. P. 44.2(a). Appellant's counsel promptly made an offer of proof, explaining that Don Goad, a senior director of Cenikor, a drug and alcohol dependency treatment program, would testify (1) that appellant "is still eligible to enter the Cenikor program," and (2) "a little bit about what Cenikor is." In the offer of proof, counsel noted that the trial court had already admitted Defense Exhibit 3, a letter offering appellant admission into Cenikor's adult long-term inpatient

treatment program in Fort Worth. As counsel stated at the time of the offer, and as the trial court confirmed, "the Court's very familiar with the program." The State did not challenge Exhibit 3, the offer of proof, or appellant's admission to the program, nor did the trial court question the program's potential benefits to appellant.

The record also reflects that the court did consider appellant to be sincere in his professed desire to change his life. The court took a recess to read a series of appellant's written 500-word statements entitled "Why I should change all the people that could be harmful to my recovery"; "A plan for my acceptance of drug court," "Not having a foundation or support group," "I have also been accepted to the Cenikor Program," and "Healthy substitutes for drugs and alcohol" that were addressed to the court and admitted into evidence as Defendant's Exhibit 5. The court returned and explained its ruling to appellant:

> THE COURT: This—this is a difficult—was a difficult decision. So Mr. Rimes, I'm going to tell you I read your letter. I've heard everything you said, everything that your attorney said. What is unfortunate for me is it's just too late. It's too little too late. You've had 20 years of opportunities to try to turn this around, and unfortunately, at this point, I think we're just out of options and out of opportunities for you.
>
> And that makes me sad because you're articulate. You are intelligent. You really had an opportunity to try to do something before this, and so I don't want you to be completely discouraged.
>
> I am going to sentence you to the minimum, the 25 years.
>
> I hope you take the time to finish your degree. I know you said you started it. I don't think you finished it. I hope you finish it. I hope you

–18–

know you still have the opportunity even from TDC to get some help and have an influence and make an impact. You're going to run across a lot of guys, a lot of kids that are going to look up to you that are going to be getting out soon.

And I know that you wanted to stay out and take a chance at recovery and try to have an impact on people, but honestly, I think you can have a much bigger impact at TDC sharing what you now know about the choices you made when you got out that landed you right back there. And I think you have a real opportunity here to positively impact some of those younger guys that are going to be getting out in the next few years by sharing your story with them and being truthful with them and not telling them, you know, a lot of the same stuff.

THE DEFENDANT: Thanks, Your Honor.

THE COURT: So I appreciate the responsibility and the accountability that you've taken for your actions. And you know—and I want you to know I appreciate that, and that this was not an easy decision for me. I would like to have given you another chance, but it's just too many chances.

So I am going to give you the minimum, but I really, really hope you will take the opportunity to try to impact some of the people that you're going to encounter over the next few years because I think you have a good story, and I do believe that you have a good heart and that you want to change. And I think you can have an impact on people, and I hope you take that opportunity to do that where you can.

Nothing in the record reflects that any error from proceeding with trial via Zoom contributed to appellant's conviction or punishment. TEX. R. APP. P. 44.2(a). The record is devoid of any indication that the problems appellant cites as inherent in Zoom proceedings—such as technical difficulties, a defendant's inability to convey sincerity, or a cumbersome procedure to consult with counsel—had any effect on the trial court's rulings. Consequently, we decide appellant's fourth issue against him.

## CONCLUSION

The trial court's judgment is affirmed.

/Leslie Osborne//

LESLIE OSBORNE

JUSTICE

210038f.u05
Do Not Publish
TEX. R. APP. P. 47



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

GEOFFREY ROSS RIMES,
Appellant

No. 05-21-00038-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-80654-
2020.
Opinion delivered by Justice
Osborne. Justices Schenck and Smith
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 23rd day of August, 2022.