Garland THIBODEAUX, Appellant

v.

The STATE of Texas, Appellee

No. 07-16-00324-CR

Court of Appeals of Texas,
Amarillo.

May 30, 2017

Wade Jackson, Abilene, for Appellee.

Joel Cook, Lubbock, for Appellant.

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

## OPINION

Brian Quinn, Chief Justice

Garland Thibodeaux (appellant) appeals his conviction for being a felon who unlawfully possessed a firearm within the five years of his release from mandatory supervision, i.e. § 46.04(a)(1) of the Texas Penal Code. Two issues are before us and both implicate the effectiveness of trial counsel. In the first, appellant argues that the trial court abused its discretion in refusing to conduct a hearing on his amended motion for new trial. Trial counsel was allegedly ineffective because he failed to attack the voluntariness of appellant's consent to search the vehicle. Through the second, appellant contends that he was denied the effective assistance of counsel due to his

attorney's failure to subject the State's case to "meaningful adversarial testing." We affirm.

### Ineffective Assistance of Counsel

■ We address the second issue first. According to appellant, "[t]rial counsel committed cumulative errors during the trial that amounted to a complete failure of the adversarial process," and he "was, for all intents and purposes, unrepresented at a felony trial with felony enhancements." Thus, the conviction should be reversed under *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), as opposed to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), according to appellant. We overrule the issue.

■ Simply put, appellant suggests that his attorney performed in a deficient manner and those deficiencies effectively denied him his Sixth Amendment right to an attorney. *See* U.S. Const. amend. VI (stating that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence"). The difference between the denial of counsel under *Stickland* and the denial under *Cronic* is one of kind as opposed to degree. *Wheat v. State*, No. 07-14-00127-CR, 2016 WL 1572084 at *3, 2016 Tex. App. LEXIS 3986 at *7-8 (Tex. App.—Amarillo Apr. 16, 2016, pet. ref'd) (mem. op., not designated for publication), quoting *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Via the former, the court decides whether particular instances of conduct are deficient, and, if found so, then whether the deficiency resulted in prejudice. Through the latter, there is no need to assess prejudice. Rather, prejudice is presumed due to the extreme nature of the deficiency. *Id.*, 2016 WL 1572084 at *2, 2016 Tex. App. LEXIS 3986 at at *4.

■ Though the deficiencies triggering the application of *Cronic* may be several, that relied upon by appellant involves trial counsel's utter failure "to subject the prosecution's case to meaningful adversarial testing." *Id.*, 2016 WL 1572084 at *2–3, 2016 Tex. App. LEXIS 3986 at *4-5. And while no one can reasonably question that utterly failing to subject the prosecution's case to meaningful testing effectively denies the accused of his Sixth Amendment right, the circumstances falling under that umbrella are extreme. For instance, our Court of Criminal Appeals has said that "[u]nder *Cronic* and its progeny, a defendant is denied counsel not only when his attorney is physically absent from the proceeding, but when he is mentally absent as well, *i.e.*, counsel is asleep, unconscious or otherwise actually *non compos mentis*." *Ex parte McFarland*, 163 S.W.3d 743, 752 (Tex. Crim. App. 2005). Furthermore, "[t]his prong of *Cronic* is epitomized by the 'inert' or 'potted plant' lawyer who, although physically and mentally present in the courtroom, fails to provide (or is prevented from providing) *any* meaningful assistance." *Id.* (emphasis in original). Counsel of such ilk was found present in *Cannon v. State*, 252 S.W.3d 342 (Tex. Crim. App. 2008).

In *Cannon*, defense counsel informed the trial court that he would not participate in the trial because he was unprepared and the trial court would not grant a continuance to allow him to prepare. *Id.* at 350. True to his representation, trial counsel "declined to participate in jury selection, declined to enter a plea for his client, declined to make an opening or closing argument to the jury, declined to cross-examine any of the State's witnesses, declined to make any objections, declined to offer any defense, declined to request any special jury instructions, and declined to offer any evidence or argument with respect to punishment." *Id.* According to our

Court of Criminal Appeals, this inactivity "constructively denied appellant his Sixth Amendment right to the effective assistance of counsel," even though defense counsel did move for an instructed verdict and informed the trial court of a mistake in sentencing. *Id.* In effect, counsel's demeanor represented a "boycott" of the trial despite his presence and an abandonment of his role as advocate. *Id.* As a result, the trial lost "its character as a confrontation between adversaries." *Id.*

As can be seen from *McFarland* and *Cannon*, more than mere instances of deficient performance is needed to illustrate the type of failings needed to establish the type of denial contemplated under *Cronic*. Rather, the record must evince something comparable to having an attorney in name only. Indeed, we have rejected the application of *Cronic* to situations wherein counsel may have performed deficiently in numerous respects but nevertheless participated in the trial and defense of his client. *E.g. Wheat v. State*, 2016 WL 1572084, at *3, 2016 Tex. App. LEXIS 3986, at *8 (observing that counsel "conducted voir dire, successfully challenged a member of the venire for cause, cross-examined the State's witnesses, presented oral argument, questioned the credibility of State witnesses, and made several motions and objections during the guilt-innocence phase of trial. During the punishment phase, he engaged in a voir dire examination of a State's witness and objected to her proffered testimony. As noted, he also called three defense witnesses and argued for a minimum term of confinement and for rehabilitation."). Simply put, counsel may make demonstrable errors in performance without effectively denying his client his Sixth Amendment right under *Cronic*. *See Cannon v. State*, 252 S.W.3d at 349, quoting *United States v. Cronic, supra* (stating that "[w]hen a true

adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred."). And though the demonstrable errors may fall short of evincing a *Cronic* situation, that does not mean they similarly fall short of evincing ineffective counsel under a *Strickland* analysis.

We assume that appellant is correct in arguing that his counsel could have objected to extraneous evidence but did not, could have pursued a better trial strategy, and opened the door to the admission of adverse evidence. Nevertheless, the record illustrates that he cross-examined witnesses, objected to evidence offered by the State, sought to discredit a prime witness via allusion to adultery, pursued a trial strategy apparently focused on minimizing the risk of danger posed by appellant, engaged in voir dire of the jury panel to some extent, proffered a closing argument during both the guilt/innocence and punishment phases of the trial, proffered witnesses during the punishment phase of the trial, and moved for a new trial. This evinces participation in the trial and an effort to test the State's case. It does not depict the "inert," "potted plant" attorney alluded to in *McFarland*. In short, the present record is more akin to that in *Wheat* than that in *Cannon* or described in *McFarland*. Thus, we reject appellant's effort to gain reversal under *Cronic*.

*Hearing on Motion for New Trial*

The next issue before us involves the trial court's failure to conduct a hearing on appellant's amended motion for new trial and to arrest the judgment. The amended motion raised a claim of ineffective assistance reviewable under the *Strickland* standard. According to appellant, a hearing on the motion was required because it contained a matter not discernable from the record. The matter

in question concerned whether appellant was sufficiently drunk to prevent him from granting consent to the local sheriff to search his car. *See, e.g., Higgins v. State*, 924 S.W.2d 739, 743-44 (Tex. App.—Texarkana 1996, pet. ref'd) (involving the voluntariness of the defendant's statement and stating that if an accused's intoxication rendered him incapable of making an independent, informed choice of free will, then his statement is involuntary). As indicated in the amended motion and accompanying affidavits, trial counsel allegedly had access to a video of appellant's arrest and that video purportedly revealed appellant to be drunk. Consequently, trial counsel should have moved to suppress the firearm eventually found in the car because his client's consent to search the vehicle was neither knowing nor voluntary.

The argument is premised on the belief that consent to search was the only basis upon which the sheriff could justify the search of the vehicle. And, because the video was never introduced into evidence and the existing record failed to reveal appellant's high level of intoxication, the trial court was obligated to conduct a hearing on the motion. In other words, an evidentiary hearing was needed to develop both intoxication and trial counsel's deficiency in failing to move to suppress the gun. In denying him that hearing, the trial court allegedly erred. We disagree.

The right to have a hearing on a motion for new trial is not absolute. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). Yet, the trial court must conduct one when the defendant raises a matter not determinable from the record and establishes, via the motion and supporting affidavits, reasonable grounds showing that he could potentially be entitled to relief; to deny a hearing under those circumstances constitutes an abuse of discretion. *Id.* Moreover, if the affidavit is conclusory or unsupported by facts, then no hearing is required. *Id.*

Arguably, the extent of appellant's intoxication was not a matter determinable from the rather meager record at bar. However, another matter that was determinable from it negates the likelihood that appellant had reasonable grounds potentially entitling him to relief. The matter of which we speak also concerns the legitimacy of the sheriff's search of appellant's vehicle.

According to the record, appellant was attending a "barbecue cook-off" being held in an RV park. Also attending the event was his ex-girlfriend, Miller. At some point during the cook-off, appellant texted various messages to Miller. One of them contained a picture of a hand holding a gun. The message accompanying the picture indicated that appellant had a "bullet" for her. That resulted in Miller phoning the sheriff. He along with a deputy responded to the call and arrived at the gathering.

After interviewing the complainant, both the deputy and sheriff began searching for appellant at the cook-off. Sometime during this interval, the sheriff also acquired information and conducted a criminal history check revealing that appellant was a convicted felon.

Eventually, appellant was found at the event, detained, handcuffed, and placed in the patrol unit. So too was he asked if he possessed a gun. Apparently upon receiving a negative answer, the sheriff asked for permission to search his vehicle which was at the RV park. Appellant granted him such permission. But before the sheriff could conduct the search, appellant called him back. The sheriff returned to appellant who then said that he had "been to Amarillo[,] that somebody had stolen his dog and he might have his grandfather's

handgun in the car." Hearing that, the sheriff walked to the car, opened the driver's side door and saw the handgun protruding from between the driver's seat and console. Pictures taken of the weapon and its location revealed the firearm to be clearly visible once the door was open.

Authority dictates that law enforcement officers may conduct a warrantless search of a vehicle if the vehicle is readily mobile and probable cause exists to believe that it contains contraband. *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009) (discussing the automobile exception which permits, under some circumstances, law enforcement officials to conduct a warrantless search of a car). Furthermore, it is not necessary for the vehicle to be on a public street or in a public place before this authority may be exercised; it can be in a private driveway, according to our Court of Criminal Appeals. *Id.* at 335-36. With this in mind, we return to the evidence mentioned above.

Appellant's statement about having been to Amarillo, the evidence that he lived in the country, and the evidence that his car was at the cook-off provided the trial court with factual basis to reasonably infer that the vehicle was readily mobile. Appellant's comment about having his grandfather's handgun in the car along with the evidence that he was a convicted felon also provided factual basis for the trial court to reasonably conclude that the sheriff had probable cause to believe the vehicle contained contraband, namely the firearm. More importantly, that probable cause arose before the sheriff searched the car for the gun. So too was its existence independent of appellant's permission to search. Thus, it appears that appellant is mistaken in arguing that the only authority the sheriff had to search the car was that garnered through consent. The trial court had an alternate basis upon which to uphold the search, *i.e.*

the automobile exception discussed in *Keehn*. It not only rendered irrelevant the need for consent but also negated the second prong of *Hobbs*. It negated the possibility that appellant had reasonable grounds showing that he could potentially be entitled to relief. That, in turn, prevents us from holding that the trial court abused its discretion when it did not conduct a hearing on appellant's amended motion for new trial.

We overrule appellant's issues and affirm the judgment of the trial court.