

# NUMBER 13-24-00034-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

COURTNEY WASHINGTON,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                         Appellee.

## ON APPEAL FROM THE 19TH DISTRICT COURT
## OF MCLENNAN COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Silva
### Memorandum Opinion by Justice Benavides

A jury convicted appellant Courtney Washington of murder, a first-degree felony, and sentenced him to twenty years' imprisonment. *See* TEX. PENAL CODE ANN. § 19.02. By four issues, Washington argues: (1) he was denied his constitutional right to a speedy trial; (2) he was denied effective assistance of counsel during a critical stage of the proceedings; (3) the trial court abused its discretion by failing to conduct an inquiry into

the attorney-client relationship between Washington and his lead trial attorney; and (4) the assessment of court-appointed attorney's fees and court costs is improper. We affirm as modified.

## I.   PROCEDURAL BACKGROUND[1]

On September 3, 2020, a grand jury indicted Washington for the murder of Larry Bryant. [2] Two attorneys were appointed to represent Washington. Nevertheless, throughout the life of the case, several pro se motions and letters were filed either by Washington or on his behalf.

For instance, on October 15, 2020, the indigent defense coordinator for the McLennan County Criminal Court System filed one of Washington's letters into the case. In this letter, Washington complained that he had been unable to make contact with the lead attorney on his case after several attempts to reach her and "no longer wan[ted] her on [his] case." Another letter was filed by the indigent defense coordinator on January 19, 2021, in which Washington again complained of his lead attorney's performance, stating that "[s]he has not done ANYTHING I have asked her to do this past 6 months." And yet another letter was forwarded on April 29, 2021, in which Washington again complained about his lead attorney. On July 7, September 5, October 19, and December 25, 2022,

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the Waco Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] Because the underlying facts of the murder are not relevant to our analysis of the issues, we omit them from our discussion. *See id.* R. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

Washington filed a motion directly with the court, seeking to dismiss his lead attorney from the case.

On February 22, 2022, Washington filed a pro se motion for speedy trial. In it, he requested a trial date "on or before June 14, 2022," or a dismissal of the indictment. On March 9, May 19, and December 25, 2022, Washington filed requests for a pretrial hearing, asking the court to consider, for example, his "[m]otions to suppress evidence[,] [m]otions of dismissal of counsel[, and] [a]ny other matter in which the defendant seeks a pretrial ruling." Washington also requested that the pretrial hearing "be set sufficiently in advance of the trial on th[e] merits so as to enable the defendant properly to prepare for the trial."

On multiple occasions, Washington filed a motion to reduce his bond. Washington also moved at various times for discovery regarding certain witnesses and to cross-examine certain eyewitnesses to determine whether any identification of him as the perpetrator was the result of impermissibly suggestive law enforcement practices.

While Washington was filing these motions, his lead attorney, after securing the appointment of an investigator for Washington's case, continued moving the court to authorize additional funds for the investigator. She also requested discovery from the State on May 22, 2023.

The first trial in this case began on June 21, 2023, and for reasons unclear from the record, a mistrial was declared that same day. A second mistrial was declared on July 20, 2023, after an empaneled jury could not reach a unanimous verdict. On November 30, 2023, after the conclusion of a third trial, a jury found Washington guilty of murder.

Washington was sentenced as described above, and this appeal followed.

## II. RIGHT TO SPEEDY TRIAL

By his first issue, Washington argues that his right to a speedy trial was violated.

## A. Standard of Review & Applicable Law

The Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amends. VI, XIV; *Shaw v. State*, 117 S.W.3d 883, 888 (Tex. Crim. App. 2003). "In determining whether an accused has been denied his right to a speedy trial, a court must use a balancing test 'in which the conduct of both the prosecution and the defendant are weighed.'" *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). "The factors to be weighed in the balance include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay." *Id.* "No single factor is necessary or sufficient to establish a violation of the defendant's right to a speedy trial." *Shaw*, 117 S.W.3d at 889.

"However, before a court engages in an analysis of each *Barker* factor, the accused must first make a threshold showing that 'the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay.'" *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). "Given the 'imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent

4

upon the peculiar circumstances of the case.'" *Zamorano v. State*, 84 S.W.3d 643, 648–49 (Tex. Crim. App. 2002) (quoting *Barker*, 407 U.S. at 530–31). For instance, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* (citing *Barker*, 407 U.S. at 531).

When reviewing an application of the *Barker* balancing test, "we give almost total deference to historical findings of fact of the trial court that the record supports . . . , but we review de novo whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis and the weighing of the *Barker* factors, which are legal questions." *Gonzales*, 435 S.W.3d at 808–09. "To be clear, while an evaluation of the *Barker* factors includes fact determinations and legal conclusions, 'the balancing test as a whole is a purely legal question that we review *de novo*.'" *State v. Lopez*, 631 S.W.3d 107, 114 (Tex. Crim. App. 2021) (quoting *Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016)).

## B. Analysis

Importantly, preservation-of-error requirements "do apply to speedy-trial claims." *Henson v. State*, 407 S.W.3d 764, 768 (Tex. Crim. App. 2013); *see* TEX. R. APP. P. 33.1(a). Although Washington filed a motion asserting his right to a speedy trial, his attorney did not. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) (explaining that because a defendant does not have a right to hybrid representation, a trial court is free to disregard pro se motions filed by the defendant while represented by counsel). And there is no indication in the record that the trial court considered or ruled on Washington's motion. Accordingly, Washington's pro se motion did not preserve the

error before us. *See* TEX. R. APP. P. 33.1(a); *Dean v. State*, 995 S.W.2d 846, 850 (Tex. App.—Waco 1999, pet. ref'd) ("Because she did not seek a ruling on her constitutional right to a speedy trial, . . . [appellant] failed to preserve her complaint, and we cannot consider this point on appeal."), *cited approvingly in Henson*, 407 S.W.3d at 768; *Crocker v. State*, 441 S.W.3d 306, 312 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) ("Even if we were to construe this letter as an assertion of his right to a speedy trial, Crocker never presented it to the trial court and never obtained a ruling. We therefore conclude that Crocker failed to preserve his speedy trial complaint for appellate review."); *see also Thomas v. State*, No. 12-22-00073-CR, 2023 WL 4682317, at *4 (Tex. App.—Tyler July 21, 2023, pet. ref'd) (mem. op., not designated for publication) ("It is well settled that a pro se speedy-trial motion, filed while the defendant has counsel and on which the trial court does not rule, is not subject to appeal.").

At a pretrial hearing on April 6, 2023, the trial court offered June 20th as a trial setting. Counsel responded, "My client has expressed a desire to have it sooner than that. Towards, the end of April, first of May?" The trial court then offered May 1st as a potential trial setting, but counsel declined without providing a reason. "A speedy-trial demand should be, at the very least, unambiguous." *Henson*, 407 S.W.3d at 769. And "[i]t is a long-standing rule in this State that absent an adverse ruling of the trial court, which appears in the record, there is no preservation of error." *Darty v. State*, 709 S.W.2d 652, 655 (Tex. Crim. App. 1986). Because of this, we conclude that this issue has not been preserved for our review, and we overrule it.

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Washington argues that he was denied his right to effective assistance of counsel during a critical phase of trial.

### A.    Applicable Law & Standard of Review

"Evaluating claims of ineffective assistance of counsel under the Sixth Amendment involves a two-pronged test: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's error." *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Both prongs of the *Strickland* test are judged by the totality of the circumstances as they existed at trial, not through 20/20 hindsight." *Ex parte Flores*, 387 S.W.3d 626, 633–34 (Tex. Crim. App. 2012) (internal footnote omitted). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

"To establish that counsel's actions were deficient, the appellant must show, by a preponderance of the evidence, that counsel's actions fell below an objective standard of reasonableness." *Hart*, 667 S.W.3d at 781. "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "We will not second-guess legitimate strategic or tactical decisions made by counsel in the midst of trial." *Williams*, 301 S.W.3d at 687. "Ordinarily, trial counsel should be afforded an opportunity to explain his conduct before being denounced as ineffective." *Sandoval v. State*, 665 S.W.3d 496, 545 (Tex. Crim. App.

7

2022). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

However, "there are a few situations in which prejudice under the second prong will be presumed." *Ex parte McFarland*, 163 S.W.3d 743, 752 (Tex. Crim. App. 2005). The Supreme Court in *Cronic* recognized a "narrow exception" to *Strickland* that "infrequently" applies to claims of ineffective assistance of counsel. *Florida v. Nixon*, 543 U.S. 175, 190 (2004) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)). The "[m]ost obvious" application of *Cronic* "is the complete denial of counsel." *Cronic*, 466 U.S. at 659. However, an appellant may also advance a *Cronic* claim by "demonstrat[ing] that defense counsel 'entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing,' so that there was a constructive denial of the assistance of counsel altogether." *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008) (quoting *Cronic*, 466 U.S. at 658–59). "[T]he attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002); *see State v. Frias*, 511 S.W.3d 797, 810 (Tex. App.—El Paso 2016, pet. ref'd) ("While his defense can be described as minimal at best, we cannot say that his failure to test the State's case was 'complete.'"). "[O]nly when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Cronic*, 466 U.S. at 662; *see, e.g., Cannon*, 252 S.W.3d at 350 ("Defense counsel, although physically present in the courtroom at all the requisite times, effectively boycotted the trial

8

proceedings and entirely failed to subject the prosecution's case to meaningful adversarial testing.").

## B.     Analysis

Washington has advanced a *Cronic* claim on appeal by arguing that he was constructively denied his Sixth Amendment right to counsel at a critical stage of trial. *See Cronic*, 466 U.S. at 658. "The Sixth Amendment right to counsel 'extends to all "critical stages" of the criminal proceeding, not just the actual trial.'" *See Gilley v. State*, 418 S.W.3d 114, 120 (Tex. Crim. App. 2014) (quoting *Hidalgo v. State*, 983 S.W.2d 746, 752 (Tex. Crim. App. 1999)). One such "critical stage," Washington appears to argue, includes the entire pretrial period. To be sure, the period from arraignment to trial is "perhaps the most critical period" of criminal proceedings. *United States v. Wade*, 388 U.S. 218, 225 (1967) (citing *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). But that does not mean this "critical period" is itself a "critical stage." *Russell v. Denmark*, 68 F.4th 252, 271 (5th Cir. 2023) ("Neither the Supreme Court nor this court has ever held that the *entire* pretrial period is a critical stage."), *cert. denied*, 144 S.Ct. 576 (Jan. 8, 2024); *cf. Gilley*, 418 S.W.3d at 123 ("The appellant argues that, 'in Texas, . . . "a critical stage" of a criminal proceeding encompasses all *pretrial* proceedings.' The only case he cites for this proposition supports no such categorical Sixth Amendment proposition." (omission in original) (internal footnote omitted)). Instead, "we must scrutinize any pre-trial event with a view to ascertaining whether presence of counsel is necessary to assure fairness and the effective assistance of counsel at trial." *Gilley*, 418 S.W.3d at 120 (quoting *Green v. State*, 872 S.W.2d 717, 720 (Tex. Crim. App. 1994)).

Washington points to several motions he filed that were not adopted by his attorney in arguing he was effectively denied his right to counsel altogether. However, Washington does not dispute that he was represented by counsel at the time these motions were filed. The difference between *Strickland* and *Cronic* "is not of degree but of kind." *Bell*, 535 U.S. at 697. Accordingly, to support a *Cronic* claim, Washington must show not just that his counsel was deficient, but that his counsel was so deficient it was as if she did not exist. *See Thibodeaux v. State*, 521 S.W.3d 421, 424 (Tex. App.—Amarillo 2017, pet. ref'd) ("[W]e have rejected the application of *Cronic* to situations wherein counsel may have performed deficiently in numerous respects but nevertheless participated in the trial and defense of his client."); *see also Rubio v. State*, No. 05-18-00861-CR, 2023 WL 3749804, at *13 (Tex. App.—Dallas June 1, 2023, pet. ref'd) (mem. op., not designated for publication) ("[T]he [*Strickland* and *Cronic*] standards distinguish between shoddy representation and none at all.").

Washington cites no authority indicating that an attorney's failure to file pretrial motions is validly analyzed under *Cronic* rather than *Strickland. See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also Mares v. State*, 52 S.W.3d 886, 891 (Tex. App.—San Antonio 2001, pet. ref'd) ("The failure to file pre-trial motions is not categorically deemed ineffective assistance of counsel because trial counsel may decide not to file pre-trial motions as part of his trial strategy."). In the usual case in which an ineffective assistance of counsel claim is made, be it a claim under *Cronic* or *Strickland*, it is likely that "the record on direct appeal will not be sufficient to

10

show that counsel's representation was so deficient and so lacking in tactical or strategic decision[-]making as to overcome the presumption that counsel's conduct was reasonable and professional." *See Cannon*, 252 S.W.3d at 349–50 (citing *Bone*, 77 S.W.3d at 833).

In most respects, this is one of those usual cases. Although Washington filed a pro se motion to reduce his bond, his attorney never filed a similar motion of her own. The trial court ultimately denied Washington's requested relief by written order on August 28, 2023. The order indicates that Washington's motion "was called to the attention of the court" but does not identify precisely how the court was alerted (e.g., by the defendant, by his attorney, by reading through the case file, etc.). Without a more developed record, we cannot conclude that Washington's counsel acted unreasonably by not filing a motion to reduce bond.[3] *See id.*

The record is also not sufficiently developed to explain why counsel did not move for a speedy trial. As the court of criminal appeals has recognized, "the deprivation of a speedy trial often can benefit the appellant." *Henson*, 407 S.W.3d at 769; *see Johnson v. State*, 901 S.W.2d 525, 532 (Tex. App.—El Paso 1995, pet. ref'd) (concluding that trial counsel could have had a valid strategic reason for not moving for a speedy trial, and thus did not provide ineffective assistance of counsel); *see also Dean v. State*, No. 12-03-

---

[3] Further, the record indicates that Washington was adjudicated guilty of two separate offenses on December 18, 2020: (1) assault family violence with a prior conviction; and (2) evading arrest. *See* TEX. PENAL CODE ANN. §§ 22.01, 38.04. Washington was sentenced to five years in prison and twenty-four months in state jail, respectively, with the sentences to run concurrently. It is unclear from the record how much of each sentence Washington served. However, the fact that her client's liberty would continue to be restrained regardless of whether a motion to reduce bond was granted would be a valid reason for not filing such a motion. *See Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) ("Counsel is not required to engage in the filing of futile motions.").

00074-CR, 2004 WL 1486154, at *6 (Tex. App.—Tyler June 30, 2004, pet. ref'd) (mem. op., not designated for publication). Indeed, part of counsel's strategy at trial was to highlight the witnesses' memory lapses, a circumstance that could be attributed in part to the delay in bringing this case to trial.

Washington points to a waiver of arraignment appearing in the record that bears only his trial counsel's signature, not his. He contends that this violated his right to counsel. But Washington's attorney did not agree to waive arraignment on Washington's behalf; she agreed that Washington would "be arraigned at [the] time of trial." Washington's arraignment appears in the record. He pleaded not guilty on June 20, 2023, with counsel by his side. Accordingly, Washington was not denied his right to counsel at this stage. *See Bell*, 535 U.S. at 697.

Further, it is clear from the record that Washington was not entirely denied his right to counsel. His attorney filed a motion to appoint an investigator, which was granted, and filed several motions to increase the funds paid to the investigator so that they could continue their investigation of Washington's case. Two mistrials were declared during counsel's representation. Counsel also requested discovery from the State and obtained a favorable ruling on a motion in limine. Washington makes no complaints regarding his lead attorney's performance during trial or of his second attorney's performance throughout the entirety of the case. *See Ex parte McFarland*, 163 S.W.3d at 760 ("[A]lthough one of his attorneys slept through portions of the trial, applicant was not deprived of the assistance of counsel under the Sixth Amendment because his second attorney was present and an active advocate at all times.").

12

Whether addressed under the *Strickland* standard or the *Cronic* standard, Washington's ineffective assistance of counsel claim fails. Accordingly, we overrule his second issue.

## IV.    INQUIRY INTO MOTIONS TO DISMISS COUNSEL

By his third issue, Washington argues that the trial court erred by failing to conduct an inquiry into his attorney-client relationship with trial counsel.

### A.    Standard of Review & Applicable Law

A trial court may appoint new counsel for good cause. TEX. CODE CRIM. PROC. ANN. art. 26.04(j)(2). But "[a]ppointment of new counsel is a matter solely within the discretion of the trial court." *Solis v. State*, 792 S.W.2d 95, 100 (Tex. Crim. App. 1990). "Conflicts of personality and disagreements between counsel and client are not automatic grounds for withdrawal." *Id.* "A trial court has no duty to search for counsel agreeable to a defendant." *Maes v. State*, 275 S.W.3d 68, 71 (Tex. App.—San Antonio 2008, no pet.).

We review a trial court's decision to not dismiss appointed counsel for an abuse of discretion. *Id.* And the Texas Court of Criminal Appeals "has historically affirmed the trial judge's decisions in refusing defendants' motions to dismiss their court-appointed counsel." *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982).

### B.    Analysis

Citing primarily to federal authority, Washington claims that the trial court had a duty to conduct a sua sponte inquiry into Washington's concerns regarding his lead attorney. However, in Texas, the defendant bears the burden of making the trial court aware of his dissatisfaction with counsel, stating the grounds for the dissatisfaction, and

13

substantiating the claim. *Hill v. State*, 686 S.W.2d 184, 187 (Tex. Crim. App. 1985); *Garner v. State*, 864 S.W.2d 92, 99 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd); *cf. Malcom*, 628 S.W.2d at 792 ("[A]ppellant maintains that the failure of the court to hold a hearing on his motion to dismiss counsel denied his procedural and substantive due process rights. We disagree."). "If the defendant makes an adequate showing, certain circumstances, for example, a claim of a conflict of interest, may warrant the trial court's exercising its discretion to discharge previously appointed counsel and appoint substitute counsel." *Carroll v. State*, 176 S.W.3d 249, 255 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

None of Washington's complaints constitute the type of "conflict of interest" that a trial court has a duty to investigate. *Cf. Routier v. State*, 112 S.W.3d 554, 582 (Tex. Crim. App. 2003). In his motions and letters, Washington complained about: (1) his attorney's failure to file the motions he wanted her to; (2) Washington's belief that his attorney thought he was guilty because she reportedly said Washington was "in trouble" and things "look[ed] bad"; and (3) her general lack of responsiveness. However, none of these subjective concerns mandate the appointment of new counsel. *See King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); *see also Johnson v. State*, Nos. 2-05-205-CR, 2-05-206-CR, 2006 WL 2578033, at *3 n.24 (Tex. App.—Fort Worth June 22, 2006, pet. ref'd) (mem. op., not designated for publication) ("[T]he reasons stated in appellant's letters for desiring new counsel—alleged lack of communication, personality conflicts, and disagreements concerning trial strategy—are not adequate reasons for appointing new counsel."); *Neill v. State*, No. 04-03-00763-CR, 2004 WL 1510622, at *1 (Tex. App.—San

14

Antonio July 7, 2004, pet. ref'd, untimely filed) (mem. op., not designated for publication) (concluding that because appellant's complaints regarding the failure to file certain pretrial motions "relates to a disagreement concerning trial strategy, the complaint is not a valid ground to replace trial counsel"); *Davis v. State*, No. 03-03-00148-CR, 2004 WL 1171442, at *5 (Tex. App.—Austin May 27, 2004, pet. ref'd, untimely filed) (mem. op., not designated for publication) (holding that appellant did not meet his burden to show he was entitled to a change of counsel where his main complaints concerned a failure "to file the appropriate and requested pre-trial motions" and "that there was an antagonistic relationship" with his attorney).

Washington also represented at times that he and his attorney were "in fundamental and unalterable disagreement over the conduct of the defense and the objectives that should be pursued in preparing and presenting the defense," but he did not provide any specifics about their divergent objectives. *See Calloway v. State*, 699 S.W.2d 824, 831 (Tex. Crim. App. 1985) (concluding that a defendant is not "entitled to automatic reversal with harm presumed" if the claimed conflict "is advanced without some allegation or assertion of a logical supporting fact, and the trial court fails to make inquiry or conduct a hearing thereon").

In sum, we conclude that Washington did not alert the trial court to any potential conflict of interest that was sufficient to justify the appointment of new counsel. Therefore, we conclude the trial court did not abuse its discretion in failing to conduct further inquiry into his complaints regarding counsel's performance. *See id.*; *see also Wade v. State*, No. 02-21-00125-CR, 2023 WL 2534468, at *17–18 (Tex. App.—Fort Worth Mar. 16,

2023, pet. ref'd) (mem. op., not designated for publication). We overrule Washington's third issue.

## V. FEES AND COSTS

By his final issue, Washington argues that the assessment of court-appointed attorney fees and costs was improper. The State concedes this issue.

"A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." TEX. CODE CRIM. PROC. ANN. art. 26.04(p). The trial court may only order a defendant to pay outstanding court-appointed attorney's fees "if the judge determines that the defendant has the financial resources to pay" those fees. *Id.* art. 26.05(g-1)(2). The trial court determined that Washington was indigent. No showing of changed circumstances appears in the record. Accordingly, the trial court erred by assessing court-appointed attorney's fees against Washington. *See Briceno v. State*, 675 S.W.3d 87, 98–99 (Tex. App.—Waco 2023, no pet.) (holding that assessment of court-appointed attorney's fees against defendant presumed to be indigent was improper absent any evidence of a material change in circumstances).

Additionally, the trial court imposed $200 in court costs as reimbursement fees for certain services provided by law enforcement. *See* TEX. CODE CRIM. PROC. ANN. art. 102.011. The assessment of statutory court costs against indigent defendants is not per se improper. *Martin v. State*, 405 S.W.3d 944, 947 (Tex. App.—Texarkana 2013, no pet.); *see also Palacios v. State*, No. 01-18-00368-CR, 2019 WL 3418509, at *3 (Tex. App.— Houston [1st Dist.] July 30, 2019, pet. ref'd) (mem. op., not designated for publication)

16

("[S]everal courts of appeals have held that indigence does not preclude the recovery of statutory court costs, so long as they are not required to be paid in advance.").

The Legislature recently amended the code of criminal procedure to require trial courts to conduct an inquiry into a defendant's ability to pay any fines or costs assessed. *See* TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1). Washington urges that "[b]ecause the trial court . . . did not make the inquiry, the case should be remanded for the court to make the inquiry," and cites to the Fourteenth Court of Appeals' decision in *Cruz v. State*, 694 S.W.3d 1 (Tex. App.—Houston [14th Dist.] 2023), *aff'd on other grounds*, No. PD-0628-23, 2024 WL 4031525 (Tex. Crim. App. Sept. 4, 2024), in which that court concluded: (1) "that a defendant's right to an ability-to-pay inquiry is 'fundamental to the proper functioning of our adjudicatory system'"; and (2) that an appellant is not required to object to the trial court's failure to conduct the ability-to-pay inquiry to preserve the issue for appeal. *Id.* at 6. However, on petition for review, the Texas Court of Criminal Appeals disagreed with the lower court, holding that "[t]he Article 42.15(a-1) inquiry is not fundamental to the adjudicatory process, so it is forfeitable." *Cruz*, 2024 WL 4031525, at *6. Washington did not object below to the trial court's failure to conduct an ability-to-pay inquiry prior to its assessment of these costs. Accordingly, he has forfeited his right to complain on appeal of the court's failure to conduct this inquiry.[4]  *See id.*

---

[4] We note, as the court of criminal appeals did in *Cruz*, that Washington is not without recourse:

> The same relief from fine and costs offered by Article 42.15(a-1)(1)–(4)—delayed or periodic payments, community service, and/or fine-and-costs waiver—is available forever after sentencing. . . . The defendant need only tell the court of his hardship; and he may do so in person by motion, letter, or "any other method established by the court for that purpose." . . . The court must grant the hardship hearing unless it (1) already held one and knows that the judgment does not impose a hardship or (2) can determine without a

We sustain Washington's final issue in part, and we overrule it in part.

## VI.    CONCLUSION

We modify the trial court's judgment to delete the assessment of court-appointed attorney's fees in the amount of $3,187.70. We affirm the trial court's judgment as modified.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
7th day of November, 2024.

---

hearing that relief should be granted.

*Cruz v. State*, PD-0628-23, 2024 WL 4031525, at *3 (Tex. Crim. App. Sept. 4, 2024) (internal citations omitted).